# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MOHAMMAD MOSHARROF HOSSAIN, | ) | |
| | ) | |
| | ) | |
|    Plaintiff, | ) | **Case No. 3:22-cv-00627** |
| | ) | **JURY DEMAND** |
| v. | ) | |
| | ) | **Judge Aleta A. Trauger** |
| PHH MORTGAGE CORPORATION, | ) | **Magistrate Judge Alistair E. Newbern** |
| d/b/a PHH MORTGAGE SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| WELLS FARGO BANK, NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE FOR | ) | |
| SECURITIZED ASSET BACKED | ) | |
| RECEIVABLES LLC TRUST | ) | |
| 2006-HE2 MORTGAGE PASS- | ) | |
| THROUGH CERTIFICATES, | ) | |
| SERIES 2006-HE2, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| WILSON & ASSOCIATES, PLLC, | ) | |
| | ) | |
|    Defendants. | ) | |

---

## DEFENDANTS PHH MORTGAGE CORPORATION AND WELLS FARGO N.A., AS TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

---

Pursuant to Federal Rule of Civil Procedure 56, Defendants PHH Mortgage Corporation, d/b/a PHH Mortgage Services, LLC ("PHH") and Wells Fargo N.A., as Trustee ("Wells Fargo"), submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## INTRODUCTION

In this third action regarding the application of payoff funds and monthly mortgage payments involving two separate mortgages, Mr. Hossain alleges that PHH and Wells Fargo

misapplied payments, wrongfully rejected payments, and improperly foreclosed on real property. As set forth below, however, the undisputed facts demonstrate that Mr. Hossain was in default under the terms of his mortgage documents, the loan was properly referred to foreclosure, and the foreclosure was conducted in compliance with the Deed of Trust and Tennessee law. As a result, Wells Fargo and PHH are entitled to judgment as a matter of law.

## FACTS

### A. *PHH Services Two Loans for Plaintiff*

On March 21, 2006, Plaintiff Mohammad Hossain executed two separate Notes and Deeds of trust (each, a "Loan") associated with the purchase of two houses on the same block of Highland Trace Dive in Nashville, Tennessee. (Statement of Undisputed Material Facts ("SUMF") ¶¶ 1,2.) Mr. Hossain used one of the loans to purchase the property located at 25**05** Highland Trace Drive, and the other to purchase the property located at 25**09** Highland Trace Drive. (*Id*.) The Deed of Trust for the 2505 Highland Trace Drive property was assigned to Defendant Wells Fargo on November 9, 2011. (SUMF ¶ 3.)

PHH (and its predecessor, Ocwen Loan Servicing, LLC) serviced the Loans associated with both properties. (SUMF ¶ 4.) The Loan for 2505 Highland Trace was serviced under loan number 07057322**87** (the "2287 Account"), and the Loan for 25**09** Highland Trace Drive was serviced under loan number 07057322**53** (the "2253 Account), (SUMF ¶ 5), as summarized below:

|  | PHH Loan Number | Origination Date | Address |
|---|---|---|---|
| 2287 Account | 0705732287 | March 21, 2006 | 2505 Highland Trace Drive |
| 2253 Account | 0705732253 | March 21, 2006 | 2509 Highland Trace Drive |

In January 2020, Mr. Hossain sent $65,032.64 (the "Payoff Funds") to PHH to pay off the 2253 Account in full. (SUMF ¶ 6.) On or around January 16, 2020, PHH applied the funds to the 2287 Account rather than the 2253 Account. (SUMF ¶ 7.) Because the Payoff Funds satisfied the

2287 Account, a Release of the 2287 Account Deed of Trust was recorded with the Davidson County Register of Deeds (the "2287 Account Deed of Trust Release"). (SUMF ¶ 8.)

### B. *Litigation Regarding the 2253 Account and 2287 Account*

On March 2, 2020, Mr. Hossain filed a lawsuit against PHH in Davidson County General Sessions Court, Case No. 20GC4190 (the "General Sessions Action") asserting the Payoff Funds had not been applied to the 2253 Account and requesting application of such payment. (SUMF ¶ 9.) On or around June 5, 2020, PHH reversed the Payoff Funds from the 2287 Account and applied the Payoff Funds to the 2253 Account. (SUMF ¶ 10.) PHH and Mr. Hossain settled the General Sessions Action on or around August 3, 2020, and Mr. Hossain broadly released any claims regarding the 2253 Account, including application of the Payoff Funds. (SUMF ¶ 11.) The Payoff Funds were subsequently applied to the 2253 Account, and a Release of the 2253 Account Deed of Trust was recorded with the Davidson County Register of Deeds. (SUMF ¶ 12.)

Once the Payoff Funds had been reversed from the 2287 Account, Wells Fargo filed a complaint in Davidson County Chancery Court on December 14, 2020, Case No. 20-1240-IV (the "Chancery Action"), seeking rescission of the 2287 Account Deed of Trust Release. (SUMF ¶ 13.) On March 4, 2021, Mr. Hossain filed an answer in the Chancery Action and did not assert any counterclaims. (SUMF ¶ 14.) In its March 16, 2022 Final Order granting Wells Fargo's Motion for Summary Judgment, the Chancery Court cancelled the 2287 Account Deed of Trust Release and reinstated the 2287 Account Deed of Trust, rendering the 2287 Account Deed of Trust "enforceable as if the Release had never been registered." (SUMF ¶ 15.)

### C. *Payoff Application Unwound and Reapplied*

During the time the General Sessions Action was pending, Mr. Hossain sent monthly payments to PHH for the 2287 Account; specifically, he remitted payments in the amount of

3

$711.75 for the February 2020, March 2020, April 2020, May 2020, and June 2020 monthly payments (the "February 2020–June 2020 Payments"). (SUMF ¶ 16.) Since the Payoff Funds had been applied to the 2287 Account, however, the 2287 Account had a balance of $0.00, and the February 2020–June 2020 Payments were applied to the 2253 Account in the total amount of $3,558.75. (SUMF ¶ 17.)

When the Payoff Funds were reversed from the 2287 Account in June 2020 and applied to the 2253 Account, the February 2020–June 2020 Payments that had been applied to the 2253 account (along with some additional funds associated with the 2253 Account) were refunded to Mr. Hossain via check in the amount of $4,244.74 (the "February 2020–June 2020 Refund"). (SUMF ¶ 18.) Mr. Hossain deposited February 2020–June 2020 Refund into his checking account on July 10, 2020. (SUMF ¶ 19.)

Reversal of the Payoff Funds from the 2287 Account in June 2020 returned the 2287 Account to the point it was prior to when the Payoff Funds had been applied in mid-January 2020, so the 2287 Account was due for the February 2020 monthly payment. (SUMF ¶ 20.) The monthly statement sent to Mr. Hossain in advance of his July 2020 monthly payment identified a past due amount of $3,558.75, which is the total of the five months of past due payments for the February to June 2020 monthly payments. (SUMF ¶ 21.) Following receipt of the February 2020–June 2020 Refund, Mr. Hossain did not remit payment to PHH for these five months for the 2287 Account, which would have brought the 2287 Account current – even though Mr. Hossain had just received and deposited the February 2020–June 2020 Refund into his checking account. (SUMF ¶ 22.) Instead, he remitted a regular monthly payment of $711.75 on July 14, 2020. (SUMF ¶ 23.)

This July 14, 2020 Payment and all of the subsequent payments from July 2020 through August 2021 were rejected due to the five month delinquency on the 2287 Account. (SUMF ¶¶

4

23–39.) In certain instances funds were returned to Mr. Hossain via electronic transfer; in other instances, funds were returned to Mr. Hossain via check with an accompanying letter explaining the payments were being returned because each payment was "insufficient to bring your account current." (*Id.*) None of the payments remitted from July 14, 2020 through August 2021 were ever applied to the 2287 Account. (*Id.*)

On August 31, 2021, PHH sent Mr. Hossain a letter offering to modify the terms of the 2287 Loan ("the "Modification Offer"), which would reduce the monthly payments from $711.75 to $538.14 and would reduce the adjustable interest rate from the initial rate of 8.990% to 2.87000%. (SUMF ¶ 40.) To accept the Modification Offer, Mr. Hossain had to make a payment of $538.14 by October 1, 2021 and had to execute and return the Loan Modification Agreement that was enclosed with the Modification Offer. (SUMF ¶ 41.) Mr. Hossain remitted a payment of $725.47, which PHH accepted in accordance with the Modification Offer, but Mr. Hossain did not return the executed Loan Modification Agreement. (SUMF ¶ 42.) By letter dated January 4, 2022, Mr. Hossain was notified that the 2287 Account "is no longer eligible for the loan modification offer that was sent" because "[y]ou failed to return the final modification agreement within the required timeframe." (SUMF ¶ 43.)

From October 2021 up to August 3, 2022, Mr. Hossain continued remitting payments ranging from $711.75 to $821.26. (SUMF ¶¶ 44–48.) All of those payments were rejected or returned because they were insufficient to bring the 2287 Account current. (*Id.*) None of these payments were applied to the 2287 Account. (*Id.*) Eventually, on August 3, 2022, PHH foreclosed on the 2287 Account, and the Property was sold to a third party. (SUMF ¶ 49.) The foreclosure sale resulted in excess proceeds in the amount $69,373.59, which have been paid to Mr. Hossain. (SUMF ¶ 50.)

5

On August 18, 2022, Mr. Hossain filed his initial complaint in this action against PHH, Wells Fargo Bank N.A., and Wilson & Associates LLP alleging 22 causes of action for a violation of the Tennessee Consumer Protection Act ("TCPA") (Count I), the RICO Act (Counts II, III, IV), the Fair Debt Collection Practice Act ("FDCPA") (Count V), the Fair Credit Reporting Act ("FCRA") (Count VI), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VII), intentional and reckless misrepresentation (Count VIII), misapplication of payments (Count IX), negligence (Count X), breach of contract (Count XI), wrongful foreclosure (XII), defamation (XIII), fraud (Count XIV), the Real Estate Settlement Procedures Act ("RESPA") (Count XV), intentional infliction of emotional distress ("IIED") (Count XVI), unjust enrichment (XVII), breach of implied covenant of good faith and fair dealing (Count XVIII), the Truth in Lending Act ("TILA") (Count XIX), and the Federal Trade Commission Act ("FTCA") (Count XX), "Barred to Make Payments/Payment Rejection" (Count XXI), and reckless and wanton conduct (Count XXII). Mr. Hossain seeks only monetary damages. (ECF No. 48, PageID# 1135, ¶ 204.)

## ARGUMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To prevail on a motion for summary judgment, the moving party must show the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may either rely on any evidentiary sources listed in Rule 56(c) or may rely upon the failure of the nonmoving party to produce any evidence that would create a genuine dispute for the jury. If the non-moving party fails to make an adequate showing of an essential element, the moving party is entitled to summary judgment as a matter of law. *Williams v. Ford Motor Co*., 187 F.3d 533, 537–38 (6th Cir. 1999).

# I. THE CONTRACT AND QUASI CONTRACT[1] CLAIMS FAIL AS A MATTER OF LAW.

The gravamen of the complaint sounds in contract – that PHH breached the Note and Deed of Trust by applying the Payoff Funds to the wrong loan, by refusing to accept and apply payments on the 2287 Account, and in foreclosing on the 2887 Account. To state a claim for breach of contract, a plaintiff must prove: (1) the existence of a valid contract; (2) breach of the contract, and (3) damages that flow from the breach. *See Smith v. Music City Homes, LLC*, No. 3:12-cv-0681, 2013 WL 12100999, at *1 (M.D. Tenn. Dec. 17, 2003). Mr. Hossain cannot satisfy the elements of the contract or quasi contract claims.

Once the Payoff Funds were reversed from the 2287 Account, the 2287 Account reverted to its position as of January 16, 2020, the date the Payoff Funds were applied. Thus, the 2287 Account was due and owing for the February 1, 2020 monthly payment and subsequent monthly payments. Mr. Hossain appears to take the position in his Complaint that he should be credited for any payments he sent to PHH regardless of whether such payments were accepted and applied or whether they were returned to him.

As noted above, the February 2020–June 2020 Payments were applied to the 2253 Account since the 2287 Account had a $0.00 balance. Once the Payoff Funds were reversed from the 2287

---

[1] Because "unjust enrichment requires the absence of a valid contract," "at the summary judgment stage, a court forecloses [the ability to continue under both claims] if . . . it finds that there was in fact a valid contract." *Vanderbilt Univ. v. Scholastic, Inc.*, 541 F. Supp. 3d 844, 867 (M.D. Tenn. 2021). The parties agree the 2287 Account Note and Deed of Trust are valid contracts. (*See* ECF No. 48, PageID#1157, ¶332.) The Court should grant the Motion for Summary Judgment as to the Unjust Enrichment claim (Count XVII).

Additionally, "Tennessee courts have also consistently found that a breach of the duty of good faith and fair dealing 'is not a cause of action in and of itself but [is] part of a breach of contract cause of action.'" *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 899 (M.D. Tenn. 2022) (citation omitted). The Court should grant the Motion for Summary Judgment as to the Breach of the Duty of Good Faith and Fair Dealing claim (Count XVIII).

Account and applied to the 2253 Account, however, the February 2020–June 2020 Payments were refunded to Mr. Hossain, which he deposited into his checking account. Mr. Hossain did not remit the February 2020–June 2020 Payments back to PHH for application to the 2287 Account. As a result, the 2287 Loan was five months was past due.

Because the 2287 Account was five months past due, a single monthly payment was not sufficient to reinstate the Loan. The Deed of Trust specifically states that "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." (Mot. Ex. A, p. 4, § 1.) Likewise, "Lender is not obligated to apply such payments at the time they are accepted." (*Id.*) As such, PHH did not breach the Deed of Trust by refusing to accept partial payments.

When PHH applied the payment received in September 2021 (which was accepted as part of the Modification Offer) as the February 2020 Payment, such application was also in accordance with the Deed of Trust. Mr. Hossain appears to assert that because the payment was made in September 2021, it should have been applied as the September 2021 Payment. The Deed of Trust provides that all "payments shall be applied to each Periodic Payment in the order in which it became due." (Mot. Ex. A, p. 4, § 2.) When PHH received the September 2021 payment, the Loan was due for February 2020. After application of the payment received in September 2021, the Loan was due for March 2020, as required by the terms of the Deed of Trust. PHH did not breach the Deed of Trust when it applied Plaintiff's partial payment received in September 2021 as the February 2020 payment.

Finally, even if Mr. Hossain could establish that PHH and Wells Fargo breached the terms of the Note and Deed of Trust, Mr. Hossain cannot establish that he has sustained any damages for the following reasons: (1) any misapplied payments were reversed and either reapplied or

refunded; (2) Mr. Hossain received settlement funds as a result of the General Sessions Action and released any claims regarding the 2253 Account; (3) Mr. Hossain retained use and possession of the 2505 Highland Trace Drive without incurring costs associated with the 2287 Loan because the payments from July 2020-August 2022 (with the exception of one payment) were rejected or returned; and (4) not only was Mr. Hossain retaining access to all of the funds that otherwise would have been used to make the 2287 Mortgage Account payment, the property securing the 2287 Loan is a rental property from which Mr. Hossain received income either from tenants and/or the Section 8 Voucher Program of the Metropolitan Development Housing Agency ("MDHA"). (ECF No. 48, PageID# 1129, 1137, ¶¶ 174, 213; ECF No. 48, PageID# 1278–79.) The Court should grant the Motion for Summary Judgment as to the following Claims: Breach of Contract (Count XI), Misapplication of Payments (Count IX), and Barred to Make Payments/Payment Rejection (Count XXI).

## II.    THE WRONGFUL FORECLOSURE CLAIM FAILS AS A MATTER OF LAW.

Mr. Hossain's claims that the foreclosure sale was procedurally improper also fail because the foreclosure sale complied with both the Deed of Trust and Tennessee law. The Deed of Trust in this case provides that prior to acceleration, the lender shall give notice to the borrower that shall specify "(a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to the borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by" the Deed of Trust. (Ex. A, p. 13, ¶ 22.) Finally, the Deed of Trust provides, "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail." (*Id.*, pp. 10–11, ¶ 15.) The "notice address shall be the Property Address unless Borrower has designated a

substitute notice address by notice to Lender." *Id.*

A Notice of Default sent to Mr. Hossain on June 10, 2020 is attached as an Exhibit to the Complaint. (ECF No. 48-1, PageID #1201.) As required by the Deed of Trust, the Notice of Default advised (a) the payments were past due, causing a default; (b) the entire past due amounts must be paid to cure the default; (c) the cure payment must be made by July 15, 2020, which is more than 30 days from the date of the Notice of Default; and (d) failure to cure the default "may result in acceleration of the sums secured by the Security Instrument and sale of the Property." (*Id.*, PageID# 1202.) In addition, each of the letters that were sent to Mr. Hossain returning his payments as insufficient to reinstate the Loan reiterated, "Your account has been referred to an attorney to handle the foreclosure process" and provided contact information for Wilson & Associates. (Mot. Ex. H.) That the Notice of Default was received by Mr. Hossain is demonstrated by the fact that he attached it as an exhibit to the Complaint.

On June 2, 2022, Wilson sent a Notice of Trustee's Sale via certified mail to Mr. Hossain. (Mot. Ex. N, Production, pp. 9-12.) The Notice of Trustee's Sale provides, "notice is hereby given that the entire indebtedness has been declared due and payable" and that an agent of Wilson will offer the property for sale. *Id.* In accordance with the Notice provisions of the Deed of Trust, the Notice of Trustee's Sale was sent to Mr. Hossain at both the property address and to other addresses designated by Mr. Hossain for such notices. (Mot. Ex. N, Production, pp. 9-64.) It is undisputed that Defendants complied with the Notice provisions of the Deed of Trust.

In addition to the notice requirements of the Deed of Trust, Tennessee Code Annotated § 35-5-101 provides publication requirements[2] for noticing a foreclosure sale and provides: (1) "In

_____

[2]The Deed of Trust similarly provides that if the Lender invokes the power of sale, the "Trustee shall give notice of sale by public advertisement in the county in which the Property is

any sale of land to foreclose a deed of trust . . . advertisement of the sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made"; and (2) the "first publication shall be at least twenty (20) days previous to the sale." Mr. Hossain acknowledges in his Complaint that the foreclosure sale was published in the Ledger on June 10, 2022, June 17, 2022, and June 24, 2022, and he attaches proof of such publication as an exhibit to the Complaint. (ECF No. 48-1, PageID #1275-77.) The first publication was at least 20 days prior to the originally scheduled July 6, 2022 sale date. It is undisputed that Defendants complied with the Notice provisions of Tennessee law as well as the Deed of Trust.

## III. THE TORT CLAIMS FAIL AS A MATTER OF LAW.

"[A]bsent special circumstances, Tennessee law does not impose common law duties on financial institutions with respect to their customers, depositors, or borrowers." *See Permobil, Inc. v. Am. Exp. Travel Related Servs. Co., Inc.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008). This is because "bank-depositor or debtor-creditor relationships generally involve arm's-length dealings." *Id.*; *see also Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 774 (M.D. Tenn. 2019) ("[W]hen two parties enter into a contractual arrangement, their obligations to each other thereafter generally arise out only of the contract itself."). Absent any extracontractual duties owed to Mr. Hossain, he cannot recover for alleged breach of such duties.

### A. The Negligence Claim (Count X) Fails as a Matter of Law.

Tennessee law considers the circumstances of the "last clear chance" doctrine when assessing the relative degrees of fault to each party. *Gray v. Roten*, No. W2010-00614-COA-R3-

---

located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower." (Ex. N, pp. 5-64.)

CV, 2011 WL 236115, at *8 (Tenn. Ct. App. Jan. 18, 2011). "[T]he basic essential" of the doctrine is "that the defendant be the last wrongdoer with a reasonable opportunity to avoid the harm." *Id.*

Even if PHH and Wells Fargo owed and breached extracontractual duties to Mr. Hossain, and such claims were not released in the settlement of the General Sessions Action or barred by the Chancery Action, Mr. Hossain, and not PHH or Wells Fargo, had the "last clear chance" to avoid foreclosure of the 2287 Account. PHH reversed, reapplied, and refunded any misapplied payments. Mr. Hossain had the ability, through the February 2020–June 2020 Payments Refund check, incoming tenant rent payments, or payments from MDHA, to bring the 2287 Account current. Mr. Hossain also could have accepted the Modification Offer by returning the executed Loan Modification Agreement, which would have brought the 2287 Loan current and lowered his interest rate and monthly payment. Mr. Hossain did neither, and his failure to act precludes recovery on a negligence claim. The Court should grant the Motion for Summary Judgment as to the negligence claim (Count X).

### B.     The Defamation Claim (Count XIII) Fails.

To make a prima facie case of defamation, the plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the trust of the statement. *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). The alleged defamatory statement must constitute a "serious threat to the plaintiff's reputation." *Id.* These damages cannot be presumed but must be sustained and proved. *Id.*

One of the bases for Mr. Hossain's defamation claim is PHH's dissemination of information to Wilson, who was acting as an attorney for PHH in the foreclosure process. Communication with counsel is not a publication is not actionable for the purposes of the

12

defamation claim. *See Hossain v. Ocwen Loan Servicing, LLC*, No. 3:14-0002, 2016 WL 6138628, at *3 (M.D. Tenn. Oct. 21, 2016), *report and recommendation adopted*, 2016 WL 6995657; *Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 24 (Tenn. 2007) (holding that communications with attorneys without fear of defamation "is so vital and necessary to our judicial that it must be made paramount.").

Mr. Hossain also asserts the foreclosure publications constitute defamation. Truth is an absolute defense to defamation. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978). When PHH conveyed or published any information regarding the 2287 Account, PHH accurately relayed the information that was contained in its transaction history for the 2287 Account, which showed the 2287 Loan was due for March 1, 2020 and thus was in default. The Court should grant the Motion for Summary Judgment as to the Defamation claim (Count XIII).

## C.      The Fraud Based Claims Fail as a Matter of Law.

To establish a claim for fraudulent or intentional misrepresentation[3], a plaintiff must show: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth of recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation. The undisputed facts prevent Mr. Hossain from establishing that the elements of a fraud or misrepresentation claim.

---

[3]"There is not a separate cause of action for intentional misrepresentation in Tennessee." *PNC Multifamily Capital v. Bluff City*, 387 S.W.3d 525, 547–48 (Tenn. Ct. App. 2012). The Court should grant the Motion for Summary Judgment as to the Intentional and Reckless Misrepresentation Claim (Count VIII).

Mr. Hossain claims that PHH made multiple misrepresentations of material facts in his monthly mortgage statements, notices, and escrow statements. As set forth above, the statements and correspondence sent to Mr. Hossain regarding accurately reflected PHH's records regarding the 2287 Account, and thus did not misrepresent the status of Mr. Hossain's account. PHH sent monthly statement and countless letters to Mr. Hossain explaining that his account was due for the February 2020 payment (and then the March 2020 Payment after the Modification related payment received in September 2021 was applied), that the 2287 Account was past due, that payments would not be accepted and applied because they were insufficient to bring the loan current, and that the 2287 Account was subject to foreclosure. Mr. Hossain also cannot establish that he ever relied on any alleged misrepresentation to his detriment. Finally, even if Mr. Hossain could identify a misrepresentation that he relied on to his detriment, Mr. Hossain cannot establish that he sustained any damages associated with such alleged misrepresentations. The Court should grant the Motion for Summary Judgment as to the Fraud claim (Count XIV).

**D.** **The Intentional Infliction of Emotional Distress (Count XVI) and Reckless or Wanton[4] (Count XXII) Claims Fails as a Matter of Law.**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show "(1) the conduct complained of must be intentional or reckless; (2) the conduct complained of must be so outrageous that it is not tolerated in civil society; and (3) the conduct complained of must result in serious mental injury." *Barret v. Whirlpool Corp.*, 704 F. Supp. 2d 746, 757 (M.D. Tenn.

---

[4]The Tennessee cases that use the phrase "reckless and wanton conduct" do not appear to recognize a separate cause of action for "reckless and wanton conduct." *See Hill v. City of Memphis*, No. W2013-02307-COA-R3-CV, 2014 WL 7426636 (Tenn. Ct. App. Dec. 30, 2014); *Owen v. Tennessee*, 221 S.W.2d 515 (Tenn. 1949). Accordingly, the Court should grant the Motion for Summary on the Reckless and Wanton Conduct claim (Count XXII).

14

2010) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Mr. Hossain has not presented any evidence that PHH and Wells Fargo acted outrageously.

For conduct to be outrageous, it must be "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain*, 936 S.W.2d at 623 (overruled on other grounds by *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996)). This is an "exacting standard" and "not an easy burden to meet." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010); *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012). It is not enough that a "defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Id.* Outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Becker*, 334 S.W.3d at 763. Nor does it include words that are "mean and hurtful." *Crossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 791 (M.D. Tenn. 2018).

Mr. Hossain claims PHH and Wells Fargo acted with "cruel and illegitimate" intentions by filing the Chancery Action to rescind the 2287 Account Deed of Trust Release. Under Tennessee law, however, filing a lawsuit cannot serve as the basis for an intentional infliction of emotional distress claim, and the process of litigation cannot amount to "outrageous" or "atrocious" conduct. *See Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) ("Even though the taking of the deposition and the filing of the lawsuit against him may have caused some level of emotional distress . . . the conduct did not rise to the level of outrageous conduct; the conduct must be atrocious."). Mr. Hossain has not presented any evidence that PHH or Wells Fargo committed outrageous or atrocious conduct. The Court should grant the Motion for Summary Judgment as to the Intentional Infliction of Emotional Distress claim (Count XVI).

15

## IV.  THE STATUTORY CLAIMS FAIL AS A MATTER OF LAW

*First*, Mr. Hossain admits in his Complaint the 2287 Loan is for a non-owner-occupied rental property. (ECF No. 48, PageID# 1128, 1137, ¶¶ 174, 213.) Neither RESPA, TILA,[5] nor the FDCPA[6] apply to loans on rental properties.  RESPA does not "apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes . . . ." *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011). Credit that is "extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes . . . ." *See id.*  As a result, the 2287 Account is for a business-purpose loan, and the RESPA claim (Count XV), TILA claim (Count XIX), and FDCPA claim (Count V) should be dismissed as a matter of law.

*Second*, it is well-established in Tennessee that "the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings." *See Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017) (affirming summary judgment in favor of a mortgage lender on a TCPA claim); *Ross v. Orion Financial Grp., Inc.*, No. M2018-00991-COA-R3-CV, 2019 WL 1084286, at *11 (Tenn. Ct. App. Mar. 7, 2019)

---

[5] *See Bell v. SunTrust Mortg., Inc.*, No. 3:08-cv-391, 2009 WL 2913690, at *2 (E.D. Tenn. Sept. 2, 2009) (loans for property obtained for commercial rental properties are not subject to RESPA or TILA); *Laporte v. Wells Fargo Bank, N.A.*, No. 3:08-cv-376, 2009 WL 2146324, at *2 (E.D. Tenn. July 14, 2009); *Roberts v. FNB South of Alma, Ga.*, 716 F. App'x 854, 856–57 (11th Cir. 2017) (holding that TILA does not apply where the underlying loans are for business or commercial purposes).

[6]  The FDCPA also applies only to consumer and not commercial debts. *See McKamey v. Fin. Acct. Servs. Team, Inc.*, No. 3:09-CV-440, 2010 WL 3632192, at *3 (E.D. Tenn. Sept. 10, 2010) ("The FDCPA, which regulates collection tactics in relation to consumer, but not commercial debts, broadly defines consumer debts as: '[a]n obligation . . . of a consumer to pay money arising out of a transaction in which . . the subject of the transaction are primarily for personal, family, or household purposes.'") Likewise, "[t]here is substantial authority for the proposition the FDCPA does not apply to obligations relating to purely rental property." *Hunter v. Washington Mut. Bank*, No. 2:08-CV-069, 2012 WL 715270, at *2 (E.D. Tenn. Mar. 1, 2012).

16

("A foreclosure does not fall within the TCPA's definition of 'trade,' 'commerce,' or 'consumer transaction'"). The TCPA claim fails as a matter of law, and the Court should grant the Motion for Summary Judgment as to the TCPA claim (Count I).[7]

*Third,* Mr. Hossain's claim under the FTCA fails because the act does not provide a private right of action. *See Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001) (affirming dismissal of complaint because "no private cause of action exists under the FTCA"). The FTCA claim fails as a matter of law, and the Court should grant the Motion for Summary Judgment as to the FTCA claim (Count XX).

*Fourth,* under the FCRA, PHH and Wells Fargo have certain responsibilities as "furnishers of information to consumer reporting agencies": (1) the duty "to provide accurate information," and (2) the duty to investigate allegedly inaccurate information "upon notice of dispute" raised by the borrower to the credit report agency. 15 U.S.C. §§ 1681s–2(a); 1681s-2(b)(1); *Carney v. Experian Information Solutions, Inc.*, 57 F.Supp.2d 456 (W.D. Tenn. 1999) (explaining that the duties of furnishers of information arise once a consumer reporting agency gives the furnisher notice of a consumer's dispute over the completeness or accuracy of information provided by the furnisher to the consumer reporting agency).

As set forth above, PHH's business records and Mr. Hossain's checking account records demonstrate that Mr. Hossain had not paid as agreed under the terms of the Note and Deed of Trust. PHH accurately reported such information to the credit agencies. Furthermore, Mr. Hossain has not presented any evidence that he disputed any reporting with the credit reporting

---

[7]The same is true of the FDUTPA. Florida courts have held that "the processing of foreclosure cases" is not "'trade or commerce' as defined by the FDUTPA statute." *See Law Office of David J. Stern, P.A. v. Florida*, 83 So. 3d 847, 850 (Fla. Ct. App. 2011). Accordingly, Plaintiff's FDUTPA claim fails as a matter of law for the same reason as Plaintiff's TCPA, and the Court should grant the Motion for Summary Judgment on the FDUPTA claim (Count VII).

agencies or that PHH or Wells Fargo received notification of a dispute from any credit reporting agency. The FCRA claim fails as a matter of law, and the Court should grant the Motion for Summary Judgment as to the FCRA claim (Count VI).

*Fifth*, any RICO claim requires "proof of a pattern of racketeering activity." *Akers v. Maerkle*, 2021 WL 5863827, at *4 (M.D. Tenn. Oct. 22, 2021) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989). RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). Crimes comprising "racketeering activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as "predicate acts." A Plaintiff must show that "the predicate acts are related *and that they constitute or pose a threat of continued criminal activity*." *H.J. Inc.*, 492 U.S. at 238 (emphasis added). Courts have regularly dismissed as insufficient the RICO claims brought by defaulting mortgagors against the holder of the mortgage. *See Akers*, 2021 WL 5863827, at *5 (collecting cases); *see Hossain v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-0002, 2015 WL 5243877, at *2 (M.D. Tenn. Sept. 8, 2015) (dismissing Mr. Hossain's RICO claim in an earlier lawsuit on the same grounds). For this reason, the Court should grant the Motion for Summary Judgment on the RICO claims (Counts II–IV).

## V.    PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA.

The doctrine of res judicata "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were *or could have been litigated in the former suit*." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989) (emphasis added)). Here, Plaintiff's claims were either litigated in the General Sessions Action or should have been brought as counterclaims in the Chancery Action, and those claims are barred by the doctrine of res judicata.   Under

Tennessee law, a party asserting a defense predicated on res judicata or claim preclusion must demonstrate: (1) the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privies were involved in both suits; (3) that the same claim or cause of action was asserted in both suits; and (4) the underlying judgment was final on the merits. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012).

The Chancery Court is a court of competent jurisdiction, and its order entering judgment in favor of Wells Fargo was a Final Judgment, which was not appealed. All of the parties in this litigation were either parties to the Chancery Action or in privity with a party in that Action. Wells Fargo and PHH, as the loan servicer, were in privity, and all had a shared interest in the lawfulness of the foreclosure. *See GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 343 (6th Cir. 2016) (finding privity between owner of loan and servicer).

Tennessee courts follow the "transactional" standard for determining whether a prior judgment and a pending suit are the same cause of action for purposes of applying res judicata. *See Creech v. Addington*, 281 S.W.3d 363, 380–81 (Tenn. 2009); *see also Crain v. CRST Van Expedited, Inc.*, 360 S.W.3d 374, 379 (Tenn. Ct. App. 2011) (observing that "if a party fails to file a counterclaim, other than those excluded by [Tenn. R. Civ. P. 13.01] itself, in response to a pleading in accordance with Rule 13.01 and the controversy results in a final judgment, then that party would be precluded from filing suit on that claim"). Under the "transactional" approach, Tennessee courts define a "transaction," as "used in the broad sense," to "connote[] a natural grouping or common nucleus of operative facts." *See Creech*, 218 S.W.3d at 380. Claims arise out of the same transaction if "the issue of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Roberts v. Vaugh*, No. W2008-01126-COA-R3-CV, 2009 WL 1608981, at *8 (Tenn. Ct. App. June 10, 2009).

19

In the instant Complaint, Mr. Hossain asserts that PHH has wrongfully rejected his payments towards the 2287 Account since at least July 2020—months prior to the filing of Wells Fargo's complaint in the Chancery Action. (ECF No. 48, PageID# 1095, ¶ 21.) By the time Mr. Hossain filed his Answer to the Wells Fargo Complaint in May 2021, PHH had rejected and returned Mr. Hossain's payments for nearly one year. Yet, Mr. Hossain did not file a counterclaim asserting any of the arguments he raises in the instant Complaint. Any claims associated with the application of the Payoff Funds to the 2287 Account, the reversal of the Payoff Funds from the 2287 Account, the February 2020–June 2020 Payments Refund, and the rejection of monthly payments should have been raised as compulsory counterclaims in the Chancery Action. Indeed, most of Mr. Hossain's claims in this litigation arise out of the same transaction or occurrence as the Chancery Action, are compulsory counterclaims that were not asserted, and thus, are barred.

## CONCLUSION

For the foregoing reasons, there are no genuine issues of material facts, and PHH and Wells Fargo respectfully request that the Court grant it summary judgment on all of Plaintiff's claims.

Dated: October 3, 2023

Respectfully submitted,

*s/ Joshua D. Kleppin*
Heather Howell Wright (BPR No. 30649)
Joshua D. Kleppin (BPR No. 39275)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Phone: (615) 252-2342
Facsimile: (615) 252-6342
hwright@bradley.com
jkleppin@bradley.com

*Attorneys for Defendants PHH Mortgage Corporation, d/b/a PHH Mortgage Services, LLC, and Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing DEFENDANTS PHH MORTGAGE CORPORATION'S AND WELLS FARGO BANK N.A., AS TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT has been served via the Court's electronic case filing system to:

H. Keith Morrison
Wilson & Associates, PLLC
Fayetteville, AR 72701
(479) 521-5820
(479) 521-5543 facsimile
KMorrison@TheWilsonLawFirm.com

*Attorneys for Wilson & Associates, PLLC*

and served by email and first-class mail on:

Mohammad Mosharrof Hossain
708 Lawler Lane
Nolensville, TN 37135

*Pro se Mr. Hossain*

on this the 3rd day of October, 2023.

*s/ Joshua D. Kleppin*
Joshua D. Kleppin