UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MOHAMMAD MOSHARROF HOSSAIN, | |
| Plaintiff, | Case No. 3:22-cv-00627 |
| v. | Judge Aleta A. Trauger |
| | Magistrate Judge Alistair E. Newbern |
| PHH MORTGAGE CORPORATION et al., | |
| Defendants. | |

To:     The Honorable Aleta A. Trauger, District Judge

**NOTICE**

This Amended Report and Recommendation is issued to provide notice to all parties that the Court may grant summary judgment in part to nonmovant Defendant Wilson & Associates, PLLC under Federal Rule of Civil Procedure 56(f) on the same claims that it recommended summary judgment be granted to Defendants PHH Mortgage Corp. and Wells Fargo N.A. By reissuing the Report and Recommendation with this notice, the Court provides the parties an opportunity to respond to this issue within the 14-day time period afforded for responses in opposition to this Report and Recommendation.

This Amended Report and Recommendation replaces the original Report and Recommendation (Doc. No. 74). The Clerk's Office is DIRECTED to terminate that filing as an active Report and Recommendation.

**AMENDED REPORT AND RECOMMENDATION**

This action brought by pro se Plaintiff Mohammad Mosharrof Hossain against Defendants PHH Mortgage Corp. (PHH), Wells Fargo N.A. (Wells Fargo), and Wilson &

Associates, PLLC (Wilson), involves two mortgage loans and a protracted payment dispute that spawned two state-court lawsuits and a foreclosure. (Doc. Nos. 48, 63.) PHH and Wells Fargo have moved for summary judgment on all of Hossain's claims against them (Doc. No. 57). Hossain opposes PHH and Wells Fargo's motion (Doc. Nos. 61, 62), and PHH and Wells Fargo have filed a reply (Doc. No. 66). Hossain has also filed sur-replies (Doc. Nos. 68, 69) and a motion for leave to file additional exhibits (Doc. No. 71).

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of all pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Having considered the parties' arguments and the summary judgment record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Hossain's motion for leave to file additional exhibits be granted as unopposed and that PHH and Wells Fargo's motion for summary judgment be granted in part and denied in part. The Magistrate Judge will further recommend that, pursuant to Federal Rule of Civil Procedure 56(f), the Court enter partial summary judgment in Wilson's favor after providing Hossain notice and a reasonable opportunity to respond to this Report and Recommendation.

## I. Background

### A. Factual Background

The following facts are undisputed for purposes of summary judgment except where noted.

On March 21, 2006, Hossain executed two notes and deeds of trust to purchase two houses on the same block of Highland Trace Drive in Nashville, Tennessee. (Doc. No. 63.) Hossain used one loan to purchase 2505 Highland Trace Drive and the other to purchase 2509 Highland Trace Drive. (*Id.*) The deed of trust for 2505 Highland Trace Drive was assigned to Wells Fargo on November 9, 2011. (*Id.*) PHH and its predecessor, Ocwen Loan Servicing, LLC (Ocwen), serviced both loans. (*Id.*) PHH serviced the loan for 2505 Highland Trace Drive under the loan number

0705732287 (the 2287 Account) and serviced the loan for 2509 Highland Trace Drive under the loan number 0705732253 (the 2253 Account). (*Id.*)

Hossain's troubles began when, in January 2020, he sent $65,032.64 to PHH to pay off the 2253 Account in full, but PHH applied the funds to pay off the 2287 Account instead. (Doc. Nos. 57-5, 63, 65.) Wells Fargo recorded a release of the deed of trust associated with the 2287 Account and 2505 Highland Trace Drive with the Davidson County Register of Deeds. (Doc. Nos. 48-1, 63.)

On March 2, 2020, Hossain filed a complaint against PHH in the General Sessions Court of Davidson County, Tennessee, asserting that PHH had not used his payment to pay off the 2253 account as directed. (Doc. Nos. 57-5, 63.) Hossain asked the court to require PHH to apply the payoff funds to the 2253 Account and for other monetary relief. (Doc. No. 57-5.) In June 2020, PHH reversed its application of the payoff funds to the 2287 Account and applied them to the 2253 Account. (Doc. Nos. 57-9–57-11, 63.) Wells Fargo then recorded a release of the deed of trust associated with 2509 Highland Trace Drive and the 2253 Account with the Davidson County Register of Deeds. (Doc. Nos. 48-1, 63.) PHH and Hossain settled the General Sessions Action in August 2020. (Doc. Nos. 57-5, 63.) In the settlement agreement, "Hossain broadly released any claims [regarding] the 2253 Account, including application of the Payoff Funds." (Doc. No. 63, PageID# 2279, ¶ 11.)

In December 2020, Wells Fargo—represented by Wilson—filed a complaint against Hossain in the Chancery Court of Davidson County, Tennessee, asking that court to set aside and cancel the release and reinstate the deed of trust associated with 2505 Highland Trace Drive. (Doc. Nos. 57-6, 63.) Hossain represented himself and asserted various arguments regarding Wells Fargo's and PHH's actions. (Doc. Nos. 57-6, 63.) On March 16, 2022, the Chancery Court issued

a final order granting Wells Fargo's motion for summary judgment, setting aside and cancelling the release and reinstating the 2505 Highland Trace Drive deed and declaring it "enforceable as if the [r]elease had never been registered[.]" (Doc. No. 57-6, PageID# 1623.)

Throughout this time, Hossain continued to make monthly payments to PHH intended for the 2287 Account, "remit[ting monthly] payments in the amount of $711.75 for" February, March, April, May, and June 2020. (Doc. No. 63, PageID# 2280, ¶ 16.) Because it had used Hossain's January 2020 $65,032.64 payment to pay off the 2287 Account, PHH applied these monthly payments to the 2253 Account instead. (Doc. Nos. 57-9, 63.) PHH states that, when it reversed its payoff of the 2287 Account in June 2020 and applied the $65,032.64 payment to the 2253 Account, it refunded these five monthly payments and some additional funds to Hossain by mailing him a check for $4,244.74. (Doc. Nos. 57-11, 63.) Hossain's banking records show that he deposited a check from PHH for $4,244.74 into his Bank of America checking account on July 10, 2020. (Doc. Nos. 57-7, 61-2, 63.)

Hossain states that the check PHH gave him for $4,244.74 represented "the January 2020–June 2020 payments . . . for the 2253 Account" and that PHH returned these funds "as part of [the General Sessions Court] claims." (Doc. No. 62, PageID# 2258.) Hossain argues that PHH received and accepted the February to June 2020 monthly payments that Hossain intended for the 2287 Account, but did not apply them to the 2287 Account and did not return them to him. (Doc. No. 62.)

PHH and Wells Fargo assert that, when PHH reversed the payoff of the 2287 Account— effectively resetting it to its status as of January 2020—that account's monthly payments for February to June 2020 became due. (Doc. No. 63.) PHH therefore sent Hossain a statement for the 2287 Account in June 2020 showing a total amount due of $4,884.36. (Doc. No. 48-1.) This amount included a past-due balance of $3,558.75 (representing the February to June monthly

payments); a regular monthly payment of $711.75 for July 2020; fees and charges of $30.75; and outstanding late charges, returned item charges, shortages, and other fees of $583.11. (*Id.* at PageID# 1241.)

Hossain did not pay the $4,884.36 amount. Instead, from July 2020 through August 2022, Hossain sent PHH monthly payments for amounts ranging from $711.75 to $1,447.66. (Doc. Nos. 48-1, 63.) PHH did not apply these payments to the 2287 Account. Instead, it rejected the payments and returned them to Hossain. (Doc. Nos. 63, 65.) PHH states that it returned the payments because they were insufficient to bring the 2287 Account current. (Doc. No. 63.) The record contains delinquency notices from PHH to Hossain which state that the 2287 Account "became delinquent 2/1/2020" and list the amount due—ranging from $4,884.36 in July 2020 to $28,019.86 in July 2022—to bring the account current.[1] (Doc. Nos. 61-2, 61-3.) Each delinquency notice states that "[t]he first notice or filing required by applicable law for the foreclosure process has been made." (Doc. Nos. 61-2, 61-3.) The record also contains letters from PHH to Hossain from the same time period stating that certain monthly payments were being returned "as [they are] insufficient to bring your account current." (Doc. Nos. 61-2, 61-3) These letters also state that the 2287 Account "has been referred to an attorney"—Wilson—"to handle the foreclosure process." (Doc. Nos. 61-2, 61-3.) Hossain maintains that there was no past-due balance on the 2287 Account because PHH received and accepted the February to June 2020 monthly payments Hossain intended for that account and erroneously applied them to the 2253 Account. (Doc. Nos. 62, 65.)

---

[1]     After PHH accepted one of Hossain's monthly payments in September 2021 and applied it to the amount due for February 2020, the delinquency notices stated that the 2287 Account "became delinquent 3/1/2020." (Doc. No. 61-3.)

On August 31, 2021, PHH sent Hossain a letter offering to modify the terms of the 2287 Account loan by reducing the interest rate to 2.87% and the total monthly payment to $538.14. (Doc. Nos. 57-12, 63.) The letter stated that the "mortgage modification ha[d] been approved subject to [PHH's] receipt of" "[t]he signed . . . Loan Modification Agreement and . . . [a]n initial payment in the amount of $538.14 . . . by 10/01/2021." (Doc. No. 57-12, PageID# 1724.) On September 7, 2021, Hossain mailed PHH a check for $725.47, and PHH applied the payment to the 2287 Account. (Doc. Nos. 48-1, 57-10, 63.) PHH states that it accepted this payment "in accordance with the [m]odification [o]ffer[.]" (Doc. No. 63, PageID# 2286, ¶ 41.) PHH's records for the 2287 Account show that PHH applied this payment to the balance due for February 2020. (Doc. No. 57-10.) Hossain did not sign and return the modification agreement, and PHH sent Hossain a letter on January 4, 2022, stating that the 2287 Account was "no longer eligible for the loan modification offer" because Hossain "failed to return the final modification agreement within the required timeframe." (Doc. No. 57-13, PageID# 1752; *see also* Doc. Nos. 63, 65.)

PHH foreclosed on the 2287 Account and 2505 Highland Trace Drive was sold to a third party on August 3, 2022. (Doc. No. 63.) The foreclosure sale yielded $69,373.59 in excess proceeds that were paid to Hossain. (*Id.*)

### B.    Procedural History

Hossain initiated this action on August 16, 2022, by filing a complaint against PHH, Wells Fargo, and Wilson. (Doc. No. 1.) Hossain amended his complaint multiple times; the third amended complaint docketed on March 29, 2023, is the operative pleading (Doc. No. 48).[2] The third amended complaint asserts twenty-two counts against PHH, Wells Fargo, and Wilson under

---

[2]    Two of Hossain's amended pleadings were docketed as the "third amended complaint." (Doc. Nos. 35, 48.)

federal and state laws. (*Id.*) Hossain's federal causes of action include claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (Counts II, III, IV); the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p (Count V); the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–1681x (Count VI); the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601–2617 (Count XV); the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667f (Count XIX); and the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 41–58 (Count XX). (*Id.*) Hossain's state causes of action include claims brought under the Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. §§ 47-18-101–47-18-135 (Count I); the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. Ann. §§ 501.201–501.213 (Count VII); and common law claims of intentional and reckless misrepresentation (Count VIII); misapplication of payments (Count IX); negligence (Count X); breach of contract (Count XI); wrongful foreclosure (Count XII); defamation (Count XIII); fraud (Count XIV); intentional infliction of emotional distress (IIED) (Count XVI); unjust enrichment (Count XVII); breach of implied covenant of good faith and fair dealing (Count XVIII); barring Hossain from making mortgage payments and rejecting his payments (Count XXI); and reckless and wanton misconduct (Count XXII). (*Id.*)

On October 3, 2023, PHH and Wells Fargo filed a motion for summary judgment (Doc. No. 57) supported by a memorandum of law (Doc. No. 58), a statement of undisputed material facts (Doc. No. 59), and several exhibits (Doc. Nos. 57-1–57-14). PHH and Wells Fargo argue that there are no genuine disputes of material fact regarding Hossain's claims against them and that they are entitled to summary judgment as a matter of law with respect to each claim. (Doc. No. 58.) In the alternative, PHH and Wells Fargo argue that the doctrine of res judicata bars Hossain's claims against them because the "claims were either litigated in the General Sessions [a]ction or

should have been brought as counterclaims in the Chancery [Court] [a]ction[.]" (*Id.* at PageID# 1851.)

Wilson filed a two-page "response" to PHH and Wells Fargo's summary judgment motion, stating that "[t]he pending motion and supporting filings are accurate statements of the law and applicable facts and should be granted." (Doc. No. 60, PageID# 1869, ¶ 1.) Wilson further states that, "[i]f the motion is granted[,] it will also inure to the benefit of Wilson and necessarily result in the dismissal of the entire case." (*Id.* at ¶ 2.) Wilson provides no authority or argument to support that position. Wilson has not filed a motion for summary judgment, and the deadline for it to do so under the Court's scheduling order (Doc. 39) has passed.

Hossain responded in opposition to PHH and Wells Fargo's motion for summary judgment, arguing "that there are many disputed facts" in this action that must "be tried" by a jury (Doc. No. 62, PageID# 2250) and that "the doctrine[ ] of . . . res judicata is not applicable to this present litigation" (*id.* at PageID# 2272). Hossain also filed a response to PHH and Wells Fargo's statement of undisputed material facts (Doc. No. 63); a statement of additional disputed material facts (Doc. No. 64); an affidavit (Doc. No. 65); and several exhibits (Doc. Nos. 61-1–61-3).

PHH and Wells Fargo filed a reply reiterating their summary judgment arguments (Doc. No. 66) and a response to Hossain's statement of additional disputed material facts (Doc. No. 67).

Hossain then filed two unauthorized sur-replies (Doc. Nos. 68, 69); a reply in support of his statement of additional disputed material facts (Doc. No. 70); and a motion for leave to file records related to his Bank of America checking account as additional exhibits (Doc. No. 71). PHH and Wells Fargo have not opposed Hossain's motion for leave to file additional records.

## II.     Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v.*

*Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Rule 56(f) provides that "the court may" "grant summary judgment for a nonmovant" "[a]fter giving notice and a reasonable time to respond[.]" Fed. R. Civ. P. 56(f)(1). The Sixth Circuit "'looks to the totality of the proceedings below to determine whether the losing party had sufficient notice of the possibility that summary judgment could be granted against it.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) (quoting *Turcar, LLC v. I.R.S.*, 451 F. App'x 509, 513 (6th Cir. 2011)). "'In evaluating this question,'" the Sixth Circuit "'considers whether the prevailing party moved for summary judgment; whether the losing party moved for summary judgment; what issues the parties focused on in their briefs; what factual materials the parties submitted to the court; and whether motions were filed by co-defendants.'" *Id.* "[E]ven when the district court fails to provide adequate notice to the party against whom summary judgment is granted, its judgment will be upheld unless the losing party can demonstrate prejudice." *Id.* (citing *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 960 (6th Cir. 2007)). "After a party receives notice, a reasonable amount of time to respond is presumptively ten days." *Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 822 (6th Cir. 2020).

## III.    Analysis

### A.    Hossain's Motion for Leave to File Additional Records

On December 7, 2023, Hossain filed a motion asking the Court for permission to "attach" 162 pages of records from his Bank of America checking account to his prior filings in this action. (Doc. No. 71, PageID# 2468.) Hossain argues that the records demonstrate that he "made all Full

Payment from June 2019 to November 2020 through Bank of America online . . . to PHH." (*Id.* at PageID# 2469.)

PHH, Wells Fargo, and Wilson have not opposed Hossain's motion. The motion may therefore be granted as unopposed.

### B.       PHH and Wells Fargo's Motion for Summary Judgment

#### 1.       Federal Statutory Claims

##### a.       RESPA, TILA, and FDCPA Claims (Counts V, XV, XIX)

PHH and Wells Fargo argue that Hossain's claims under RESPA, TILA, and the FDCPA fail as a matter of law because Hossain admits that he used 2505 and 2509 Highland Trace Drive exclusively as rental properties, and RESPA, TILA, and the FDCPA do not apply to loans used for non-owner-occupied or commercial properties. (Doc. No. 58.)

Congress enacted RESPA to inform "consumers throughout the Nation" about "the nature and costs of the [real estate] settlement process" and to protect consumers "from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). RESPA's implementing regulations specifically exempt "[b]usiness purpose loans[,]" defined as "extension[s] of credit primarily for a business, commercial, or agricultural purpose," from RESPA's requirements. 12 C.F.R. § 1024.5(b)(2). Similarly, TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uniformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Like RESPA, TILA's implementing regulations exempt "extension[s] of credit primarily for a business, commercial or agricultural purpose" from the statute's sweep. 12 C.F.R. § 1026.3(a)(1). RESPA and TILA therefore do not apply to mortgage loans obtained for non-owner-occupied rental properties. *See Bell v. SunTrust Mortg., Inc.*, No. 3:08-cv-391, 2009 WL 2913690, at *2 (E.D.

Tenn. Sept. 2, 2009) ("[S]everal courts have found that where individuals obtain a mortgage to buy secondary property to rent to other persons, such transactions are for business or commercial purposes, exempting them from RESPA and TILA."); *Laporte v. Wells Fargo Bank, N.A.*, No. 3:08-cv-376, 2009 WL 2146324, at *2 (E.D. Tenn. July 14, 2009) (dismissing plaintiff's RESPA and TILA claims concerning loans on commercial rental properties); *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011) (holding that RESPA does not apply to loans for "non-owner-occupied rental properties"); *Henok v. Chase Home Fin., LLC*, 947 F. Supp. 2d 6, 7 (D.D.C. 2013) ("[C]ourts have found that RESPA does not apply to loans for non-owner occupied rental properties.").

Congress enacted the FDCPA "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" *Id.* § 1692a(5). Thus, as PHH and Wells Fargo point out (Doc. No. 58), "[t]here is substantial authority for the proposition that the FDCPA does not apply to obligations relating to *purely* rental property." *Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2012 WL 715270, at *2 (E.D. Tenn. Mar. 1, 2012).

Hossain has not responded to this argument and does not dispute that he never resided at either property and operated both as rentals. Indeed, Hossain's third amended complaint alleges that he lost rental income as a result of PHH's, Wells Fargo's, and Wilson's actions. (Doc. No. 48.) PHH, Wells Fargo, and Wilson are therefore entitled to summary judgment on Hossain's RESPA, TILA, and FDCPA claims (Counts V, XV, XIX) as a matter of law.

### b.    FTC Act Claims (Count XX)

Count XX of Hossain's third amended complaint alleges that PHH, Wells Fargo, and Wilson violated Section 5 of the FTC Act. (Doc. No. 48.) PHH and Wells Fargo argue that they are entitled to summary judgment on these claims because the FTC Act "does not provide a private right of action." (Doc. No. 58, PageID# 1850.)

The Sixth Circuit has held that "Section 5 of the FTC[ Act] does not provide a private right of action." *Edoho-Eket v. Wayfair.com*, No. 17-6509, 2019 WL 2524366, at *2 (6th Cir. Jan. 23, 2019); *see also FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988) ("Congress has clearly limited the invocation of jurisdiction under the FTC Act to the Commission itself."). Hossain has not responded to this argument. PHH, Wells Fargo, and Wilson are therefore entitled to summary judgment on Hossain's FTC Act claims as a matter of law.

### c.    RICO Claims (Counts II, III, IV)

RICO imposes criminal and civil liability on any person who (1) uses income obtained "from a pattern of racketeering activity" to acquire an interest in or operate an enterprise engaged in interstate commerce, 18 U.S.C. § 1962(a); (2) acquires or maintains an interest in or control of an enterprise engaged in interstate commerce "through a pattern of racketeering activity," *id.* § 1962(b); (3) conducts or participates in the conduct of such an enterprise's affairs "through a pattern of racketeering activity," *id.* § 1962(c); or (4) conspires to violate any of the foregoing subsections, *id.* § 1962(d). Proof of a "pattern of racketeering activity" is therefore required to prevail on any claim under § 1962.[3] *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989)

---

[3]    Section 1962 provides that a plaintiff may establish RICO violations by showing the "collection of an unlawful debt" instead of a pattern of racketeering activity. 18 U.S.C. § 1962(a)–(c); *H.J. Inc.*, 492 U.S. at 232. But the statute defines "unlawful debt" as illegal gambling debt or debt unenforceable because of usury laws. 18 U.S.C. § 1961(6); *see also Saglioccolo v. Eagle Ins.*

(explaining that each activity that § 1962 prohibits includes, "as one necessary element, proof . . . of 'a pattern of racketeering activity'. . ."). Counts II, III, and IV of Hossain's third amended complaint allege that PHH, Wells Fargo, and Wilson violated each of RICO's four subsections. (Doc. No. 48.) PHH and Wells Fargo argue that they are entitled to summary judgment on these claims because there is no evidence that they engaged in a pattern of racketeering activity within the meaning of the statute (Doc. No. 58).

Hossain brought similar RICO claims against PHH's predecessor Ocwen and attorney Richard B. Maner in a prior action filed in this Court. *See Hossain v. Ocwen Loan Servicing, LLC*, Civ. No. 3:14-cv-0002, 2015 WL 5243877, at *2, *4–5 (M.D. Tenn. Sept. 8, 2015). The Court granted summary judgment to Maner on Hossain's RICO claims, finding that the "RICO claims fail[ed] because there [was] no evidence supporting a conclusion that a pattern of racketeering activity existed in which Defendant Maner was involved." *Id.* at *4. Specifically, the court explained:

> RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). Crimes comprising "racketeering activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as "predicate acts." The listed predicate acts include, among others, mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). Although Plaintiff sets out numerous examples of what he contends are acts of mail and wire fraud by Defendants, a RICO plaintiff must do more than merely recite a list of predicate acts because "there is something to a RICO pattern beyond the number of predicate acts involved." *H.J. Inc.*, 492 U.S. at 238. A plaintiff must show that "the predicate acts are related and that they constitute or pose a threat of continued criminal activity." *Id.* at 239. It is this notion of "continuity plus relationship" that combines to produce a "pattern" under RICO. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006), *cert. denied* 549 U.S. 1279 (2007).
>
> The instant case involves only Plaintiff and his dispute with Defendants over his loans with the Ocwen Defendants. The predicate acts alleged by Plaintiff, even if

_____

*Co.*, 112 F.3d 226, 229 n.1 (6th Cir. 1997) ("Under RICO, 'unlawful debt' pertains to illegal gambling debt or debt unenforceable because of usury laws.").

taken as true, were all directed at one victim, Plaintiff, with the single objective of defrauding him with respect to his own loans. A pattern of racketeering activity does not exist in such situations. Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Moon*, 465 F.3d at 725–26. *See also Southampton Assocs., L.P. v. K. Jess, Inc.*, No. 93-1616, 1995 WL 25431 (6th Cir. Jan. 23, 1995) (collecting cases); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) ("We cannot conclude that Flakt's alleged actions here, involving a single victim and a single scheme for a single purpose over seventeen months, constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO."), *cert. denied* 513 U.S. 1017 (1994); *Pavuk v. U.S. Bank Nat'l Ass'n ND*, No. 2:09-CV-00514, 2010 WL 3057407, at *4 (S.D. Ohio Aug. 2, 2010) (mailings between the defendant and the plaintiff related only to the plaintiff's own residential mortgage did not evidence a pattern of racketeering activity); *Dimov v. EMC Mortg. Corp.*, No. 1:09-CV-211, 2010 WL 2506717, at *8 (E.D. Tenn. June 17, 2010) (multiple alleged predicate acts of mail fraud and extortion were keyed to the single objective of depriving the plaintiff of his real property and were not sufficient to show a pattern of racketeering activity); *Frost v. Boyle*, No. 1:06 CV 2649, 2008 WL 650323, at *10 (N.D. Ohio Mar. 5, 2008) (an alleged single fraudulent scheme with the single objective to deprive plaintiff of attorney's fees did not allege a pattern of racketeering activity).

*Id.* at *5.

Hossain alleges that PHH committed mail fraud and "engaged in a pattern of racketeering activity by . . . "

> (a) [sending] [Hossain] [ ] false, misleading, deceptive, and threatening notice[s], issued from February 2020 to July 2022 including 06/10/2020, 06/19/2020 (erroneous and inconsistent [monthly mortgage statement]), 07/24/2020, 09/17/2020, and 07/01/2022; (b) creating false and deceptive urgency to contact Defendant PHH by issuing notices mentioned above; (c) creating the Scheme knowingly to defraud [Hossain] despite having appropriate numerous communications from [Hossain] with disputes and requests correcting the errors in the Account; (d) acting with specific intents to defraud; (e) mailing notices through USPS for the purpose of carrying out the Scheme which employed false material representations; (f) sending false past due or delinquent payment claims notices to Plaintiff by using USPS mailing in a systematic way, knowingly, and repeatedly which are materially false.

(Doc. No. 48, PageID# 1140, ¶ 227.) Hossain alleges that Wilson committed mail fraud and "engaged in racketeering activity . . . by:"

> (a) sending illegal reinstatement quote notice to [Hossain] through USPS mailing; (b) accepting payments for unauthorized foreclosure across State lines; (c) staying

on their illegal decision forcing [Hossain] to make payment to PHH and Wells Fargo despite Wilson knowing that this foreclosure was wrong and illegal; (d) helping PHH and Wells Fargo to make illegal money by pushing forward [Hossain's] Account to wrongful and illegal foreclosure.

(*Id.* at PageID# 1140–1141, ¶ 230.) Hossain further alleges that Wilson and Wells Fargo "had necessary and sufficient knowledge of th[is] . . . conspirac[y] . . . and had plenty of time, opportunity, and power to prevent erroneous Account delinquencies and wrongful foreclosure, but failed to do so or knowingly and fraudulently did not do so[.]" (*Id.* at PageID# 1141, ¶¶ 234, 235.) But, as was the case with Hossain's prior RICO claims against Maner, the predicate acts Hossain alleges that PHH, Wells Fargo, and Wilson engaged in "were all directed at one victim, [Hossain], with the single objective of defrauding him with respect to his own loans. A pattern of racketeering activity does not exist in such situations." *Hossain*, 2015 WL 5243877, at *5.

Hossain argues generally that "PHH and Wells Fargo conducted and engaged, directly or indirectly, in the conduct of unauthorized and illegal affairs through a pattern of racketeering activities[,]" but he has not offered any support for that position. (Doc. No. 62, PageID# 2271.) PHH, Wells Fargo, and Wilson are therefore entitled to summary judgment on Hossain's RICO claims against them.

### d. FCRA Claims (Count VI)

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *id.*). As relevant here, § 1681s-2 of the FCRA imposes requirements "designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information" to credit reporting agencies (CRAs). *Boggio*, 696 F.3d at 614 (quoting § 1681s-2)). "Section 1681s-2 works in two phases. Initially, furnishers have a duty to provide the CRAs with accurate

information about their consumers. Later, a furnisher may be asked by a CRA to respond to disputes about the consumer information provided." *Id.* (citing § 1681s-2(a)).

The FCRA authorizes the Consumer Financial Protection Bureau and the Federal Trade Commission to bring administrative action against furnishers of information. *Id.* at 615 (citing 15 U.S.C. § 1681s(a)–(c)). It also provides "various federal agencies [with] enforcement authority" and allows states to "seek to enjoin violators or to recover damages on behalf of consumers." *Id.* "In addition, [the] FCRA expressly creates a private right of action to enforce many of its terms." *Id.* Consumers may bring suit against "[a]ny person who is negligent in failing to comply with any requirement imposed . . . with respect to any consumer" by the FCRA, 15 U.S.C. § 1681o(a), or "who willfully fails to comply with any requirement imposed . . . with respect to any consumer" by the FCRA, *id.* § 1681n(a). *See Boggio*, 696 F.3d at 615; *Jones v. Federated Fin. Rsrv. Corp.*, 144 F.3d 961, 964 (6th Cir. 1998).

In *Boggio*, the Sixth Circuit considered whether the private rights of action created by § 1681o and § 1681n "extend[ ] to cover violations of § 1681s-2" and concluded "that consumers may rely on §§ 1681n and 1681o to enforce some, but not all, subsection of § 1681s-2." 696 F.3d at 615. Specifically, the Sixth Circuit held that "§ 1681s-2(c) expressly precludes consumers from enforcing the requirement that furnishers, under § 1681s-2(a), initially provide complete and accurate consumer information to a CRA." *Id.*; *see also* 15 U.S.C. § 1681s-2(c)(1) (stating that "sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section"); 15 U.S.C. § 1681s-2(d) (reserving enforcement of § 1681s-2(a) to "the Federal agencies and officials and the State officials identified in section 1681s of this title"). "In light of § 1681s-2(c)'s express limits, consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a CRA." *Boggio*, 696 F.3d at 615–16.

17

Hossain alleges that PHH violated the FCRA "by representing [Hossain's] Account as closed" even though "PHH knew that the reporting was false and erroneous"; by failing to "take any corrective actions against the inaccuracies of [Hossain's] credit reporting that PHH transmitted to Bureaus"; and by "fail[ing] to report [Hossain's] payment[ ] history to [TransUnion] from January 2020 to August 2022 and to [Equifax and Experian] from February 2020 to August 2022 . . . ." (Doc. No. 48, PageID# 1148, 1149, ¶¶ 275, 281, 284.) PHH and Wells Fargo concede that they are "furnishers of information to consumer reporting agencies" within the meaning of the FCRA and that they therefore had a "duty 'to provide accurate information[ ]'" to consumer reporting agencies and "to investigate allegedly inaccurate information 'upon notice of dispute' raised by the borrower to the credit report agency." (Doc. No. 58, PageID# 1850 (quoting 15 U.S.C. § 1681s-2(a), (b)).) They argue that they are entitled to summary judgment on Hossain's FCRA claims because the record evidence shows that they accurately reported information to the credit reporting agencies, that Hossain did not dispute any reports with the credit reporting agencies, and that neither PHH nor Wells Fargo received notice of a dispute from any credit reporting agency. (Doc. No. 58.) Hossain responds generally that the record evidence supports his assertion that "PHH reported false credit information to [CRAs] about [Hossain's] Account" and that "PHH had plenty of opportunity to correct all [ ] reporting, but PHH failed to do so." (Doc. No. 62, PageID# 2270.)

Hossain has not identified any evidence in the record sufficient to create a genuine dispute of material fact that PHH, Wells Fargo, or Wilson "received proper notice of a dispute from a CRA" about Hossain's accounts that would trigger a private right of action. *Boggio*, 696 F.3d at 616. Hossain's FCRA claims against PHH, Wells Fargo, and Wilson therefore fail as a matter of law.

2. **State Statutory Claims**[4]

a. **TCPA Claims (Count I)**

The TCPA "creates a cause of action for '[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by' the [TCPA]." *Davis v. McGuigan*, 325 S.W.3d 149, 161 (Tenn. 2010) (first and second alterations in original) (quoting Tenn. Code Ann. § 47-18-109(a)(1)). "[A] 'deceptive act or practice' is a material representation, practice or omission likely to mislead a reasonable consumer." *Id.* at 162 (alteration in original) (quoting *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997)). Hossain alleges that PHH, Wells Fargo, and Wilson engaged in "unfair or deceptive act[s] or practice[s]" resulting in a "wrongful foreclosure sale" that deprived him of his "property and multi-generational family rental incomes." (Doc. No. 48, PageID# 1138, ¶¶ 215, 216.)

PHH and Wells Fargo argue that they are entitled to summary judgment on Hossain's TCPA claims because "it is well[ ]established in Tennessee that 'the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings.'" (Doc. No. 58, PageID# 1849 (quoting *Jones v. BAC Home Loans Servicing, LP*, No. W2016–00717–COA–R3–CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017).) Hossain has not responded to this argument.

This Court explained in adjudicating Hossain's prior TCPA claims against Maner that "Tennessee courts have found that the TCPA does not apply to mortgage foreclosure proceedings." *Hossain v. Ocwen Loan Servicing, LLC*, No. 3:14-0002, 2014 WL 4347620, at *6 (M.D. Tenn.

---

[4] The defendants have not contested Hossain's assertion that the Court has diversity jurisdiction over his state-law claims (Doc. No. 48). In their motion for summary judgment, PHH and Wells Fargo have not argued that the Court should decline to exercise supplemental jurisdiction over Hossain's state-law claims in the event that the Court grants summary judgment to PHH and Wells Fargo on Hossain's federal claims.

19

Aug. 29, 2014); *see id.* (collecting authority). Hossain has not provided any contrary authority. Thus, Hossain's TCPA claims fail as a matter of law, and PHH, Wells Fargo, and Wilson are entitled to summary judgment on these claims.

### b. FDUTPA Claims (Count VII)

Hossain alleges that PHH conducts business in Florida and asserts this claim against PHH, Wells Fargo, and Wilson under Florida law. (Doc. No. 48.) The "FDUTPA was enacted '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Law Office of David J. Stern, P.A. v. State*, 83 So.3d 847, 849 (Fla. Dist. Ct. App. 2011) (alteration in original) (quoting Fla. Stat. § 501.202(2)). To that end, "[t]he FDUTPA declares that 'unfair or deceptive acts or practices in the conduct of any trade or commerce' are unlawful." *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1364 (M.D. Fla. 2007) (quoting Fla. Stat. § 501.204(1)). The statute defines "[t]rade or commerce" to mean "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla Stat. Ann. § 501.203(8). "A deceptive practice is one that is likely to mislead consumers. An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Trent*, 618 F. Supp. 2d at 1365 (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)). The FDUTPA also provides a private right of action to "anyone aggrieved by a violation of" the statute. Fla. Stat. Ann. § 501.211(1).

Hossain alleges that PHH, Wells Fargo, and Wilson violated the FDUTPA because they "unfairly, or deceptively, forced [Hossain's] Account in[to] default, foreclosed wrongfully, and damaged [him] monetarily by taking [his] multi-generational rental investments property." (Doc.

No. 48, PageID# 1150, ¶ 289.) PHH and Wells Fargo argue that they are entitled to summary judgment on this claim because, like the TCPA, the FDUTPA does not apply to mortgage foreclosure proceedings. (Doc. No. 58.) Hossain has not responded to this argument.

In *Trent*, the court found that the defendant's actions did "not fall within the purview of 'trade or commerce[ ]'" as defined by the FDUTPA where the defendant "obtain[ed] a legal interest in a note from third party lenders (becoming the 'holder' of the note so that it could lawfully foreclose)[,]" "proceeded to foreclosure[,]" and "communicated pre-suit with plaintiffs that it was a 'creditor' or 'owned' the debt . . . ." 618 F. Supp. 2d at 1365 n.12. The court reasoned that, "under the plain language of the [FDUTPA], [the defendant] did not 'advertise, solicit, provide, offer or distribute' anything" by engaging in these actions. *Id.*; *cf. Law Office of David J. Stern, P.A.*, 83 So.3d at 850 (finding that defendant "'law firm's conduct in the processing of foreclosure cases, as opposed to the initial applications for mortgages or the initial lending relationships, . . . [did not fall within] traditional notions of "trade or commerce" as defined by the FDUTPA statute'" (quoting *Fla. Off. of the Attorney Gen. v. Shapiro & Fishman, LLP*, 59 So.3d 353, 356 (Fla. Dist. Ct. App. 2011)). The same is true here. Hossain has not argued or identified any evidence sufficient to create a genuine dispute of material fact that PHH's, Wells Fargo's, and Wilson's actions have any "connection or nexus to trade or commerce" as the terms are defined by the FDUTPA. *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010).

Accordingly, PHH, Wells Fargo, and Wilson are entitled to summary judgment on Hossain's FDUTPA claims.

### 3. Common Law Claims

#### a. Quasi Contract Claims (Counts XVII and XVIII)

Hossain asserts claims against PHH, Wells Fargo, and Wilson of unjust enrichment (Count XVII) and breach of implied covenant of good faith and fair dealing (Count XVIII). (Doc. No. 48.) PHH and Wells Fargo argue that they are entitled to summary judgment on these quasi-contract claims because it is undisputed that the parties had a valid contract. (Doc. No. 58.) Hossain has not directly responded to this argument and does not dispute that the parties had a valid contract. (Doc. No. 62.)

"Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998). Under Tennessee law, a claim for unjust enrichment "arises when: (1) there is no contract between the parties, or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Vanderbilt Univ. v. Scholastic, Inc.*, 541 F. Supp. 3d 844, 867 (M.D. Tenn. 2021). Because unjust enrichment requires the absence of a valid contract, a party cannot recover under both a breach of contract and an unjust enrichment theory. *Id.* "[A] party may plead unjust enrichment as an alternate theory of relief at the [m]otion to [d]ismiss stage," but, "at the summary judgment stage, a court forecloses [that opportunity] if . . . it finds that there in fact *was* a valid contract." *Id.* (fourth and fifth alterations in original) (quoting *PSC Indus., Inc. v. Johnson*, No. 3:19-cv-00362, 2021 WL 1663574, at *22 n.36 (M.D. Tenn. Apr. 28, 2021)). Because Hossain "admits the existence of a valid contract, [his] unjust enrichment [ ]claim[s] cannot proceed." *Id.* at 867–68.

Further, "[i]n Tennessee, 'there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement[,]'" but "[b]reach of the implied covenant of good

faith and fair dealing is not an independent basis for relief." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir. 2003) (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)). Hossain's claims of breach of implied covenant of good faith and fair dealing therefore fail as a matter of law. *Evans v. Vanderbilt Univ. Sch. of Med.*, 589 F. Supp. 3d 870, 899 (M.D. Tenn. 2022) (dismissing claim of breach of implied covenant of good faith and fair dealing "on the basis that the claim it purports to state is not cognizable as a separate cause of action").

**b.    Contract Claims (Counts IX, XI, XXI)**

Hossain's contract claims are the heart of his third amended complaint. (Doc. No. 48.) Hossain alleges that PHH, Wells Fargo, and Wilson are liable for breach of contract (Count XI), "misapplication of payments" (Count IX), and "barr[ing Hossain] to make payments/payment rejection" (Count XXI). (*Id.* at PageID# 1154, 1184.) The latter two claims are not recognized causes of action under Tennessee law, and PHH and Wells Fargo have construed these claims as breach-of-contract claims based on PHH and Wells Fargo's initial application of the payoff funds to the 2287 Account and refusal to accept Hossain's later payments on the 2287 Account. (Doc. No. 58.)

"It is well[ ]settled that, in Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract[;] and (3) damages caused by the breach of contract." *Carrigan v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 870 F. Supp. 2d 542, 550 (M.D. Tenn. May 10, 2012). The first element is not in dispute here. The parties agree that the deed of trust and note (Doc. Nos. 57-1, 57-2) related to 2505 Highland Trace Drive and the 2287 Account are valid and enforceable. Hossain alleges that PHH, Wells Fargo, and Wilson breached the deed of trust and note in three ways, by: (1) applying the payoff funds to the 2287 Account instead of the 2253 Account; (2) refusing to accept Hossain's payments on the 2287 Account after reversing the payoff funds

and applying them to the 2253 Account; and (3) foreclosing on the 2287 Account without providing Hossain proper notice. (Doc. No. 48.)

### i.      Misapplication of Payoff Funds

There is no dispute that Hossain submitted a payment of $65,032.64 to PHH via wire transfer on January 10, 2020, intending to pay off the 2253 Account, and that PHH applied the payment to the 2287 Account instead. (Doc. Nos. 61-1, 61-3, 63.) There is also no dispute that, after Hossain filed the General Sessions action against PHH, PHH reversed the payoff funds from the 2287 Account and applied them to the 2253 Account. (Doc. Nos. 57-9, 57-10, 63.) Hossain argues that "[t]he 2287 Account and the 2253 Account were independent"; that the "payments [he] sent to PHH for these two Accounts were ***mutually exclusive***"; that "payments made for the 2287 Account cannot be applied to the 2253 Account and vice versa"; and that "PHH and Wells Fargo sharply violated this simple and commonsense assertion, per the Deed and the Note." (Doc. No. 65, PageID# 2360, ¶ 52.) PHH and Wells Fargo have not addressed Hossain's argument that the misapplication of payoff funds to the 2287 Account breached the deed of trust. Instead, PHH and Wells Fargo argue that, even if Hossain can establish a breach on this ground, he cannot show resulting damages. To support their argument, PHH and Wells Fargo cite evidence showing that PHH reversed its application of the payoff funds to the 2287 Account, applied the payoff funds to the 2253 Account, and paid Hossain an additional amount to settle Hossain's General Sessions action against PHH regarding the misapplication of the payoff funds. (Doc. Nos. 57-5, 57-9, 57-10, 63.) PHH and Wells Fargo also argue that Hossain "broadly released any claims" regarding "including application of the Payoff Funds" when he settled the General Sessions Action. (Doc. No. 63, PageID# 2279, ¶ 11.) Hossain argues generally that he "sustained huge damages by losing the multi-generational investment [p]roperty through wrongful foreclosure" but has not addressed PHH and Wells Fargo's specific damages arguments or supporting evidence. (Doc. No. 62,

PageID# 2260.) The defendants are therefore entitled to summary judgment with respect to this particular claim.

## ii.    Refusal and Return of Payments

The second alleged breach concerns PHH's refusal to accept monthly payments on the 2287 Account from July 2020 through August 2021 and from October 2021 to August 2022. PHH and Wells Fargo have provided evidence to show that, from February 2020 to June 2020, PHH applied Hossain's monthly payments meant for the then-erroneously-paid-off 2287 Account to the 2253 Account. (Doc. Nos. 57-9, 63.) They have submitted evidence to show that PHH sent Hossain a check for $4,244.74 refunding those payments to Hossain after PHH reopened the 2287 Account and applied the payoff funds to the 2253 Account and that Hossain deposited the check in his Bank of America checking account. (Doc. Nos. 57-7, 57-11, 63.) There is no dispute that PHH sent Hossain a monthly statement for the 2287 Account in June 2020 showing a total amount due of $4,884.36, representing monthly payments from February 2020 to June 2020, the July 2020 payment, and other fees and charges. (Doc. No. 48-1.) There is also no dispute that Hossain continued to send PHH regularly monthly payments on the 2287 Account from July 2020 through August 2022, that PHH refused to accept or returned all but one of those payments, and that PHH notified Hossain that it was doing so because the payments were insufficient to bring the 2287 Account current. (Doc. Nos. 48-1, 61-1, 63, 65.)

PHH and Wells Fargo argue that PHH's refusal to accept Hossain's monthly payments did not breach the parties' contractual agreement because the deed of trust provides that the "Lender may return any payment or partial payment if the payment or partial payments are insufficient to

bring the Loan current."[5] (Doc. No. 57-1, PageID# 1449, ¶ 1.) PHH and Wells Fargo have therefore carried their initial burden to show an absence of any genuine dispute of material fact that they did not breach the deed of trust and note by refusing to accept all but one of Hossain's monthly payments on the 2287 Account from July 2020 through August 2022. *Cf. Cole-Grice v. Fannie Mae*, Case No. 1:19-01287, 2022 WL 1239868, at *6 (W.D. Tenn. Apr. 27, 2022) (finding that defendant "acted within its contractual rights in refusing partial payments from Plaintiff while the Loan was in default" where deed of trust provided that "'Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current'" (citation omitted)).

Hossain has not identified sufficient record evidence to create a genuine dispute of material fact that PHH's rejection of his monthly payments breached the deed of trust. Hossain argues that the 2287 Account was current because he sent PHH monthly payments on the 2287 Account from February 2020 to June 2020 and that PHH accepted those payments. It is undisputed that he made those payments. But the undisputed record evidence also shows that PHH applied those payments to the 2253 Account; that PHH sent Hossain a check reimbursing him for those payments in June 2020 when it applied the payoff funds to and closed the 2253 Account; and that Hossain deposited that check in his personal checking account.

With the privileged view of hindsight, it seems likely that the many lawsuits spurred by this course of action could have been avoided if PHH had simply applied the five payments to the 2287 Account as Hossain intended instead of returning the payments to Hossain and resetting the

---

[5]      The deed of trust also provides that "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payment are accepted." (Doc. No. 57-1, PageID# 1449, ¶ 1.)

2287 Account to a delinquent status. But Hossain has not alleged that PHH was required to take that course of action and has not identified any such requirement in the deed of trust. Further, Hossain has not identified any evidence to dispute that the deed of trust allowed PHH to return any payments that did not bring the 2287 Account to a current status. Hossain therefore has not presented sufficient evidence to create a genuine issue of material fact that the defendants breached the terms of the deed of trust by refusing to accept Hossain's partial payments to the 2287 Account.

### iii. Pre-Foreclosure Notice

Hossain alleges that PHH, Wells Fargo, and Wilson breached the pre-foreclosure notice provisions of the deed of trust because they "failed to send all notices to [Hossain's] valid address" before foreclosing on the 2287 Account. (Doc. No. 62, PageID# 2261.) It is undisputed that the deed of trust required PHH, Wells Fargo, and Wilson—acting as successor trustee appointed by Wells Fargo—to send Hossain a notice of default and a notice of sale before foreclosing on the 2287 Account and selling the 2505 Highland Trace Drive property. (Doc. No. 57-1.) The deed of trust further specified that "[a]ll notices . . . must be in writing" and that "[a]ny notice to Borrower . . . shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." (*Id.* at PageID# 1455, ¶ 15.) The deed of trust defined "notice address" as "the Property Address unless Borrower has designated a substitute notice address by notice to Lender. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure." (*Id.*)

PHH and Wells Fargo argue that they complied with the deed of trust's pre-foreclosure notice provisions because they mailed a notice of default to Hossain on June 10, 2020, and Wilson mailed Hossain a notice of trustee's sale on June 2, 2022. (Doc. No. 58.) There is no genuine dispute that PHH and Wells Fargo sent the June 10, 2020 notice of default and that Hossain

received it; Hossain attached a copy of the notice of default (Doc. No. 48-1) to his third amended complaint and specifically alleged that PHH sent the notice to him (Doc. No. 48). PHH and Wells Fargo assert that "the Notice of Trustee's Sale was sent to Mr. Hossain at both the property address and to other addresses designated by Mr. Hossain for such notices." (Doc. No. 58, PageID# 1843.) The record evidence PHH and Wells Fargo point to shows that, on June 2, 2022, Wilson sent copies of the notice of trustee's sale to Hossain via certified and regular mail at three addresses: (1) 108 Ryan Court, Nashville, TN 37207; (2) 2505 Highland Trace Drive, Nashville, TN 37207; and (3) 7441 Highway 70 South, Apt. 465, Nashville, TN 37221. (Doc. No. 57-14.) PHH and Wells Fargo have therefore carried their initial burden to show that they complied with the deed's pre-foreclosure notice provisions.

But Hossain argues that, in June 2022, the notice address for the 2287 Account was 708 Lawler Lane, Nolensville, TN 37135-0688, and that the defendants never sent a copy of the notice of trustee's sale to this address as required by the deed. (Doc. No. 62.) In support of this argument, Hossain points to a written notice of change of address that he sent to PHH on October 7, 2020, notifying PHH that the mailing address for the 2287 Account had changed to 708 Lawler Lane, Nolensville, TN 37135-0688. (Doc. No. 61-3.) Hossain states that he and his wife sold 108 Ryan Court on December 19, 2019; that the correct zip code for 108 Ryan Court is 37221, not 37207; that he and his wife moved to 7441 Highway 70 South in November 2019; and that, in late September 2020, they moved to 708 Lawler Lane, where they continue to reside. (Doc. Nos. 62, 67.) Hossain states that he never received the notice of trustee's sale sent to other addresses. (Doc. Nos. 62, 65, 67.)

PHH and Wells Fargo have not responded to Hossain's assertion that the notice address for the 2287 Account at the time of foreclosure was 708 Lawler Lane. Notably, Hossain has submitted

evidence that PHH sent him monthly mortgage statements and delinquency notices for the 2287 Account at 708 Lawler Lane from November 2020 through August 2022. (Doc. Nos. 61-2, 61-3.) Further, as Hossain points out, records from Wells Fargo and Wilson's Chancery Court action against Hossain that PHH and Wells Fargo filed in support of summary judgment here, confirm that 708 Lawler Lane was Hossain's address of record throughout that proceeding. (Doc. No. 57-6.) There is therefore no genuine dispute of material fact, for purposes of summary judgment, that the notice address for the 2287 Account was 708 Lawler Lane at the time PHH, Wells Fargo, and Wilson foreclosed on that account. PHH and Wells Fargo have not argued or presented evidence that they mailed a copy of the notice of trustee's sale to 708 Lawler Lane. They argue only that "it is undisputed that Wilson sent a Notice of Trustee's Sale via certified mail to Mr. Hossain" at other addresses. (Doc. No. 66, PageID# 2378.) But the plain language of the deed required PHH, Wells Fargo, and Wilson to mail or deliver a copy of all notices, including the notice of trustee's sale, to Hossain's notice address. (Doc. No. 57-1.) Construing the record evidence in the light most favorable to Hossain, as it must, the Court finds that there is a genuine dispute of material fact that PHH, Wells Fargo, and Wilson breached the deed of trust's pre-foreclosure notice provisions with respect to the trustee's notice of sale.

PHH and Wells Fargo also have not argued that Hossain cannot show damages resulting from PHH and Wells Fargo's failure to comply with the deed of trust's pre-foreclosure notice provisions. They argue only that Hossain cannot show damages resulting from the misapplied payoff funds and returned payments.[6] (Doc. No. 58.) Further, their alternative res judicata

---

[6]     In their response to Hossain's statement of additional disputed material facts, PHH and Wells Fargo argue that Hossain "noted in his response to [their] Motion for Summary Judgment" that he "received the Notice of Trustee's Sale" because Hossain stated generally that "'USPS continued to forward mails to [his] mailing address.'" (Doc. No. 67, PageID# 2396, ¶ 67 (quoting

arguments are inapplicable to Hossain's claims based on PHH, Wells Fargo, and Wilson's foreclosure on the 2287 Account because the undisputed record evidence shows that the Chancery Court action reinstating the 2287 Account deed of trust concluded in March 2022 before the foreclosure took place. (Doc. No. 57-6.)

Thus, PHH, Wells Fargo, and Wilson have not shown that they are entitled to summary judgment on Hossain's claims that they breached the deed of trust by failing to comply with its pre-foreclosure notice provisions.

### c. Wrongful Foreclosure (Count XII)

In Tennessee, "[w]rongful foreclosure may be asserted . . . as a theory of a breach of contract . . . claim" or "as its own cause of action[.]" *Terry Case v. Wilmintgon Tr., N.A.*, No. E2021-00378-COA-R3-CV, 2022 WL 2313548, at *8 (Tenn. Ct. App. June 28, 2022); *see also Amodio v. Ocwen Loan Servicing, LLC*, Case No. 3:18-cv-00811, 2018 WL 6727106, at *3 (M.D. Tenn. Dec. 21, 2018) ("Under Tennessee law, it is clear that '[w]rongful foreclosure can be asserted . . . as a primary cause of action when a mortgagor asserts that a foreclosure action is improper under a deed of trust.'" (alterations in original) (quoting *Garner v. Coffee Cnty. Bank*, No. M2014–01956–COA–R3–CV, 2015 WL 6445601, at *10 (Tenn. Ct. App. Oct. 23, 2015))). This Court has described the independent cause of action of wrongful foreclosure under Tennessee law as follows:

> . . . There are no specific elements for a wrongful foreclosure claim under Tennessee law. *Ogle v. U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp.*, No. 1:17-CV-40-TAV-CHS, 2018 WL 1324137, at *3 (E.D. Tenn. Mar. 14, 2018). As many federal district courts in this state have noted, however, "Tennessee courts generally examine whether contractual or statutory requirements were met in the

---

Doc. No. 62, PageID# 2261).) The Court declines to construe this assertion as a properly presented and supported argument that Hossain cannot show damages resulting from PHH, Wells Fargo, and Wilson's failure to send a copy of the notice of trustee's sale to the 2287 Account's notice address.

foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12–cv–02344, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013).

Tennessee courts have historically required "strict compliance with the advertisement and notice terms as provided in the deed of trust." *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citing *Henderson v. Galloway*, 27 Tenn. 692, 695–96 (Tenn. 1848)). A trustee's failure to comply with the clear terms of the deed of trust pertaining to foreclosure will render a subsequent conveyance invalid. *Id.* (citing *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936)). Failure to comply with statutory provisions, however, does not provide a basis for setting aside a foreclosure sale. Tenn. Code Ann. § 35-5-106; *see also EverBank v. Henson*, No. W2013-02489-COA-R3CV, 2015 WL 129081, at *1 (Tenn. Ct. App. Jan. 9, 2015) ("[T]he mere failure of a trustee to comply with the provisions of Tenn. Code Ann. § 35-5-101 *et seq.* is insufficient to set aside a foreclosure sale."), *perm. to appeal denied* (Tenn. Dec. 15, 2015). Notwithstanding, the law also provides that violation of statutory notice provisions may give rise to a viable claim for damages. *See* Tenn. Code Ann. § 35-5-107 (providing that any person who fails to comply with the notice and other provisions of the foreclosure law is "liable to the party injured by the noncompliance, for all damages resulting from the failure"); *see also EverBank*, 2015 WL 129081, at *1 (affirming dismissal of action to set aside foreclosure sale but reinstating damages claim based on the defendant's failure to provide notice to interested party of record).

*Amodio*, 2018 WL 6727106, at *3. Significantly, "[w]ithin a wrongful foreclosure cause of action, there is no requirement that a borrower establish damages as with a breach of contract claim; instead, a trustee's mere failure to comply with the terms of a deed of trust will render the foreclosure sale invalid." *Terry Case*, 2022 WL 2313548, at *8; *see also id.* at *9 ("Unlike a breach of contract claim, we find no legal authority in Tennessee that requires a plaintiff raising a wrongful foreclosure claim to establish any other element than the creditor's failure to strictly comply with the terms of the deed of trust.").

The Court has already found a genuine dispute of material fact regarding whether PHH, Wells Fargo, and Wilson complied with the deed of trust's pre-foreclosure notice terms. Hossain alleges that PHH, Wells Fargo, and Wilson's failure to send the notice of trustee's sale to his notice address as required by the terms of the deed of trust also violated the notice requirements of Tenn. Code Ann. §§ 35-5-101(e) and 35-5-104. (Doc. No. 48.)

31

Sections 35-5-101 and 35-5-104 "govern notice or advertisement of foreclosure" sales.

*Amodio*, 2018 WL 6727106, at \*4. Specifically, § 35-5-101 provides that:

> (a) In any sale of land to foreclose a deed of trust, mortgage or other lien securing the payment of money or other thing of value or under judicial orders or process, advertisement of the sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made.
>
> (b) The first publication shall be at least twenty (20) days previous to the sale.
>
> . . .
>
> (e) In any sale of land to foreclose a deed of trust, mortgage, or other lien securing the payment of money or other thing of value or under judicial orders of process, the trustee or other party that sells the property shall send to the debtor and any co-debtor a copy of the notice required in § 35-5-104. The notice shall be sent on or before the first date of publication provided in subsection (b) by registered or certified mail, return receipt requested. The notice shall be sent to the following:
>
> > (1) If to the debtor, addressed to the debtor at:
> >
> > > (A) The mailing address of the property, if any; and
> > >
> > > (B) The last known mailing address of the debtor or any other mailing address of the debtor specifically designated for purposes of receiving notices provided at least thirty (30) days prior to the first publication date in written correspondence or written notice in accordance with the loan agreement from the debtor to the creditor, but only if the last known mailing address of the debtor or other mailing address designated by the debtor is different from the mailing address of the property; . . . .

Tenn. Code Ann. § 35-5-101(a), (b), (e)(1)(A)–(B). Section 35-5-104 lists the content requirements for advertisements or notices of foreclosure sales, none of which are at issue in this case. *See id.* § 35-5-104(a)–(d).

There is no genuine dispute of material fact that PHH, Wells Fargo, and Wilson satisfied § 35-5-101's newspaper publication requirement by publishing the notice of trustee's sale in a local newspaper on June 10, 17, and 24, 2022. (Doc. No. 48-1.) The record evidence also shows that Wilson sent a copy of the notice of trustee's sale to Hossain via certified and regular mail at the property address, 2505 Highland Trace Drive, as required by § 35-5-101(e)(1)(A). (Doc.

No. 57-14.) But there is a genuine dispute of material fact regarding whether PHH, Wells Fargo, and Wilson complied with § 35-5-101(e)(1)(B)'s requirement to send the notice to "[t]he last known mailing address of the debtor or any other mailing address of the debtor specifically designated for purposes of receiving notices provided at least thirty (30) days prior to the first publication date in written correspondence or written notice in accordance with the loan agreement from the debtor to the creditor[.]" Tenn. Code Ann. § 35-5-101(e)(1)(B). As explained above, the record contains a written notice of change of address that Hossain sent to PHH on October 7, 2020, notifying PHH that the mailing address for the 2287 Account had changed to 708 Lawler Lane, Nolensville, TN 37135-0688; nearly two years' worth of monthly mortgage statements and delinquency notices for the 2287 Account that PHH mailed to Hossain at 708 Lawler Lane; and state-court records showing that 708 Lawler Lane was Hossain's mailing address throughout Wells Fargo and Wilson's Chancery Court action against him. (Doc. Nos. 57-6, 61-2, 61-3.) Yet, there is no indication in the record that PHH, Wells Fargo, or Wilson sent a copy of the notice of trustee's sale to this address as required by § 35-5-101(e)(1)(B). And, again, PHH and Wells Fargo's alternative res judicata arguments are inapplicable to Hossain's wrongful foreclosure claim.

Consequently, PHH, Wells Fargo, and Wilson are not entitled to summary judgment on Hossain's wrongful foreclosure claims.

### d.    Tort Claims (Counts VIII, X, XIII, XIV, XVI, XXII)

Hossain asserts common law tort claims against PHH, Wells Fargo, and Wilson for intentional and reckless misrepresentation (Count VIII); negligence (Count X); defamation (Count XIII); fraud (Count XIV); IIED (Count XVI); and reckless and wanton misconduct (Count XXII). (Doc. No. 48.) PHH and Wells Fargo argue that they are entitled to summary judgment with respect to all of Hossain's tort claims because, under Tennessee law, the only duties that PHH and Wells Fargo owed to Hossain were those articulated in the parties' contractual

agreements. (Doc. No. 58.) Hossain argues generally that his "tort claims do not fail" and that PHH owed him a "contractual duty" and "breached the contractual duties" by applying Hossain's payoff funds to the 2287 Account instead of the 2253 Account. (Doc. No. 62, PageID# 2262.)

"It is well settled under Tennessee law that a tort cannot be predicated on a breach of contract. A tort can exist only if a party breaches a duty which he owes to another independently of the contract." *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, 611 F. Supp. 3d 483, 496 (M.D. Tenn. 2020) (first citing *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 129 F. Supp. 3d 589, 605 (M.D. Tenn. 2015); and then citing *Calipari v. Powertel, Inc.*, 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002)); *see also Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 774 (M.D. Tenn. 2019) ("[U]nder Tennessee law, when two parties enter into a contractual arrangement, their obligations to each other thereafter generally arise only out of the contract itself."). PHH and Wells Fargo are therefore correct that, "absent special circumstances, Tennessee law does not impose common law duties on financial institutions with respect to their customers, depositors, or borrowers. *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008) (first citing *Power & Tel. Supply Co. v SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006); and then citing *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)).

Hossain has not argued that any such special circumstances warrant imposing extra-contractual common-law duties on PHH, Wells Fargo, and Wilson. He argues only that PHH, Wells Fargo, and Wilson owed him contractual duties. Hossain's tort claims therefore fail as a matter of law, and the Court need not address PHH and Wells Fargo's alternative arguments that Hossain's tort claims fail for other reasons.

## IV. Recommendation

For the reasons that follow, the Magistrate Judge RECOMMENDS that Hossain's motion for leave to file additional exhibits (Doc. No. 71) be GRANTED AS UNOPPOSED, and that PHH and Wells Fargo's motion for summary judgment (Doc. No. 57) be GRANTED IN PART AND DENIED IN PART. The Court should deny PHH and Wells Fargo's summary judgment motion with respect to Hossain's wrongful foreclosure claims (Count XII) and his breach-of-contract claims based on PHH and Wells Fargo's failure to comply with the deed of trust's pre-foreclosure notice provisions (Count XI). The Court should grant PHH and Wells Fargo's summary judgment motion with respect to all other claims asserted against PHH and Wells Fargo in the third amended complaint.

The Magistrate Judge FURTHER RECOMMENDS that, after giving the parties fourteen days to respond to this Report and Recommendation's analysis of Hossain's claims against Wilson, the Court should enter partial summary judgment in Wilson's favor under Rule 56(f) on all claims except Hossain's wrongful foreclosure claim (Count XII) and his breach-of-contract claim based on Wilson's failure to comply with the deed of trust's pre-foreclosure notice provisions (Count XI).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after

being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 3rd day of May, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge