**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MOHAMMAD MOSHARROF HOSSAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00627** |
| | ) | **Judge Aleta A. Trauger** |
| **PHH MORTGAGE CORPORATION** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

The Magistrate Judge has issued an Amended Report and Recommendation ("R&R") (Doc. No. 76),[1] recommending that the Motion for Summary Judgment (Doc. No. 57) filed by defendants PHH Mortgage Corp. ("PHH") and Wells Fargo N.A. ("Wells Fargo") be granted in part and denied in part and that the court also grant summary judgment in part to nonmovant defendant Wilson & Associates, PLLC ("Wilson") on the same grounds. Now before the court are (1) the Objections (Doc. No. 79) filed by PHH and Wells Fargo, contending that their Motion for Summary Judgment should be granted in its entirety; and (2) *pro se* plaintiff Mohammad Hossain's Objection (Doc. No. 80), arguing that the defendants are not entitled to summary judgment on his breach of contract claim related to one of the two loans and deeds of trust at issue.[2] Both parties

---

[1] The Amended Report and Recommendation supersedes and replaces the original Report and Recommendation (Doc. No. 74).

[2] The plaintiff filed a supplemental Objection (Doc. No. 81) after the Magistrate Judge issued the Amended R&R to provide Notice to the parties that summary judgment should be granted as to nonmovant defendant Wilson as well as to the moving defendants. The plaintiff's supplemental Objection does not substantively object to granting summary judgment to Wilson on the same grounds that support summary judgment for moving defendants or add any additional argument, so this court does not address it as a separate objection.

filed a Response to the other's Objections. (Doc. Nos. 82, 83.)

For the reasons set forth herein, the defendants' Objections will be overruled, and the plaintiff's Objection will be sustained. The court will accept in part and reject in part the R&R, grant in part and deny in part the moving defendants' Motion for Summary Judgment, and grant summary judgment in part for non-movant Wilson on the same grounds.

# I.    STANDARD OF REVIEW

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505,

509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II.    PROCEDURAL BACKGROUND

Hossain brings suit against PHH, Wells Fargo, and Wilson over two mortgage loans and a payment dispute that, as the Magistrate Judge noted, "spawned two state-court lawsuits and a foreclosure" prior to the filing of this lawsuit. (Doc. No. 76, at 2 (citing Doc. Nos. 48, 63).) This entire case appears to have arisen from an unfortunate, and what would appear to have been entirely avoidable or correctable, series of errors and miscommunications. The errors were neither corrected nor avoided, and this lawsuit resulted.

Hossain, proceeding *pro se*, filed the initial Complaint initiating this case in August 2022. The Third Amended Complaint ("TAC") (Doc. No. 48), now the operative pleading, was filed in April 2023 (along with over 100 pages of exhibits). The TAC purports to set forth claims against the defendants for (1) violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104 *et seq.* (Count I); (2) violations of various provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (Counts II, III, and IV); (3) violation of the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692–1692p (Count V); (4) violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x (Count VI); (5) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201–501.213 (Count VII); (6) "intentional and reckless misrepresentation" (Count VIII); (7) "misapplication of payments" (Count IX) (which

the defendants and the Magistrate Judge construe as a breach of contract claim); (8) negligence (Count X); (9) breach of contract (Count XI); (10) wrongful foreclosure (Count XII); (11) defamation (Count XIII); (12) fraud (Count XIV); (13) violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (Count XV); (14) intentional infliction of emotional distress (Count XVI): (15) unjust enrichment (Count XVII); (16) breach of the implied covenant of good faith and fair dealing (Count XVIII); (17) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (Count XIX); (18) violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (Count XX); (19) "barred to make payments/payment rejection" (Count XXI) (which the defendants and the Magistrate Judge construe as a breach of contract claim); and (20) "reckless and wanton misconduct" (Count XXII).

PHH and Wells Fargo filed their Motion for Summary Judgment, supporting Memorandum of Law, Statement of Undisputed Material Facts ("SUMF"), and supporting documentation (Doc. Nos. 57 (and attached exhibits), 58, 59), seeking summary judgment on all claims asserted in the TAC. Defendant Wilson filed a Response, adopting the moving defendants' filings as "accurate statements of the law and applicable facts" and asserting that summary judgment for those defendants should inure to the benefit of Wilson as well and "necessarily result in dismissal of the entire case." (Doc. No. 60.) Hossain filed a Response in opposition to the motion (Doc. No. 62), a Response to the defendants' SUMF (Doc. No. 63), a separate Statement of Disputed Facts (Doc. No. 64), and additional evidentiary material (Doc. Nos. 65, 61-1 through 61-3). The moving defendants filed a Reply (Doc. No. 66), as well as a Response to Hossain's Statement of Additional Facts (Doc. No. 67). Hossain filed "Objections" to both of these documents (Doc. Nos. 68, 69) and a Reply in support of his statement of additional facts (Doc. No. 70). He also filed a Motion

for Leave to File Additional Records (Doc. No. 71), consisting of unredacted bank account records, which the defendants have not opposed.

The R&R recommends that the latter motion (Doc. No. 71) be granted as unopposed. The defendants have not objected to that recommendation, and it will be granted without discussion.

In addressing the Motion for Summary Judgment, the R&R sets forth in detail the undisputed facts, based on the parties' filings. That factual background (Doc. No. 76. at 2–6) is incorporated by reference herein. The court presumes familiarity with the facts and will reiterate here only those facts necessary to an understanding of the parties' Objections. The R&R recommends that the Motion for Summary Judgment be granted as to all claims set forth in the TAC *except* for (1) Hossain's breach-of-contract claim based on PHH and Wells Fargo's failure to comply with the deed of trust's pre-foreclosure notice provisions (Count XI) and (2) his statutory wrongful foreclosure claim (Count XII).

In their Objections, PHH and Wells Fargo assert that they are entitled to summary judgment on the wrongful foreclosure and breach of contact claims as well, arguing that, irrespective of whether they complied with the pre-foreclosure notice requirements, Hossain has not established damages relating to that failure. For his part, Hossain does not contest the dismissal of his state and federal statutory claims or his common law tort claims. The court, therefore, will accept without discussion the R&R's recommendation that summary judgment be granted as to those claims. Hossain argues only that, in addition to the wrongful foreclosure claim and the breach of contract claim related to the failure to provide pre-foreclosure notice, the court should deny summary judgment on the construed breach of contract claim incorporated in Count XXI.

### III. RELEVANT FACTS[3]

In 2006, Hossain purchased two houses on the same block of Highland Trace Drive in Nashville, Tennessee—one located at 2505 Highland Trace Drive and one located at 2509 Highland Trace Drive. In association with these purchases, he executed two separate Notes and Deeds of Trust, documenting separate mortgage loans for each property. PHH (and its predecessor, Ocwen Loan Servicing, LLC) serviced the loans associated with both properties. The loan for 2505 Highland Trace Drive was serviced under loan number 0705732287 (the "2287 Account"), and the loan for 2509 Highland Trace Drive was serviced under loan number 0705732253 (the "2253 Account").

In January 2020, Hossain sent $65,032.64 ("Payoff Funds") to PHH to pay off the 2253 Account (for the property at 2509 Highland Trace Drive) in full. Rather than applying the Payoff Funds to the 2253 Account, as Hossain intended, PHH applied the Payoff Funds to the 2287 Account instead. Because the Payoff Funds were sufficient to pay off the 2287 Account in full, the defendants recorded a Release of the 2287 Account with the Davidson County Register of Deeds (the "2287 Account Release"). The plaintiff does not dispute these facts; he disputes whether PHH and Wells Fargo were authorized to apply the funds to the 2287 Account or to record the 2287 Account Release. (*See* Doc. No. 64 ¶¶ 7, 8.) He also complains that the defendants failed to communicate any of these facts to him in a timely fashion.

On March 2, 2020, Hossain filed a lawsuit against PHH in Davidson County General Sessions Court, asserting that the Payoff Funds had not been applied to the 2253 Account and requesting application of such payment to the correct account. On June 5, 2020, PHH reversed the

---

[3] The facts for which no citation is provided are drawn from the plaintiff's Response to the defendants' SUMF (Doc. No. 63) and are undisputed for purposes of the Motion for Summary Judgment.

Payoff Funds from the 2287 Account and applied them to the 2253 Account. On August 3, 2020, PHH and Hossain settled the General Sessions Court action, and Hossain released any claims relating to the 2253 Account. After the Payoff Funds were applied to the 2253 Account, a Release of the 2253 Account Deed of Trust was recorded with the Davidson County Register of Deeds.

After the Payoff Funds were reversed from the 2287 Account, PHH filed a lawsuit in the Chancery Court for Davidson County, Tennessee, seeking rescission of the 2287 Account Release. In March 2022, the Chancery Court entered an Order cancelling the 2287 Account Release and reinstating the 2287 Account Deed of Trust.

Meanwhile, Hossain had continued to submit monthly payments in the amount of $711.75 to PHH for the 2287 Account in February 2020, March 2020, April 2020, May 2020, and June 2020, a total of $3,558.75. According to PHH, because the Payoff Funds had erroneously been applied to the 2287 Account, however, the payments Hossain intended for the 2287 Account were instead applied to the 2253 Account. Hossain maintains that he *also*, during the same time frame, continued to submit monthly mortgage payments that were intended to apply to the 2253 Account, even after submitting the Payoff Funds, because he had not received verification from PHH that the funds had been applied to pay off the 2253 Account. (Doc. No. 64, Pl.'s Resp. SUF ¶ 17(c).) The defendants have not responded to this statement; nor have they indicated to which account, if any, these funds were applied or that the funds were returned to Hossain.[4]

---

[4] The plaintiff filed a separate Statement of Disputed Material Facts and Attached Additional Statement of Disputed Material Facts. (Doc. No. 64.) In this document, he incorporated in full each statement from the defendants' SUMF as to which he contends there is a material factual dispute, explaining in detail why he believes the statement is disputed. Many of these are confusing and argumentative, focusing on semantics rather than facts, but several raise substantive factual disputes. Below each disputed fact, Hossain inserted the word **RESPONSE** and left a blank space, inviting the defendants' response to these statements of disputed fact. The defendants did not respond to these facts. Instead, they filed a Response that only addresses the second half of the plaintiff's filing, the Additional Statement of Disputed Material Facts. (Doc. No. 67.)

According to the plaintiff, in addition to monthly payments from February through June 2020 that were intended to be applied to the 2287 Account, he sent monthly payments intended for the 2253 Account from January through June 2020, despite having already sent the Payoff Funds for that account. (*Id.*; *see also* Doc. No. 65, Hossain Aff. ¶¶ 8, 29, 36–37, 53.) He provides two charts to demonstrate what he believes he paid on each account during that timeframe, the first showing payments made on the 2287 Account and the second showing payments made on the 2253 Account:

Table No.1:

| Months | Amount Paid | Delivered by to PHH | Status by Bank | Confirmation Nos. | Returned or Not Returned to Plaintiff |
|---|---|---|---|---|---|
| February 2020 | $711.75 | 02/13/2020 | Processed | Q0MXW-ZMPBC | Not Returned |
| March 2020 | $711.75 | 03/09/2020 | Processed | Q2RW9-T8J7F | Not Returned |
| April 2020 | $711.75 | 04/10/2020 | Processed | Q5ZMY-MGV4Y | Not Returned |
| May 2020 | $711.75 | 05/12/2020 | Processed | Q9B63-BMSHC | Not Returned |
| June 2020 | $711.75 | 06/15/2020 | Processed | QDSDY-40XTQ | Not Returned |
| | **Total Amount paid: $3,558.75.** | | | | |

Table No.2:

| Months | Amount Paid | Delivered by to PHH | Status by Bank | Confirmation Nos. | Returned or Not Returned to Plaintiff |
|---|---|---|---|---|---|
| January 2020 | $742.00 | 01/29/2020 | Processed | PZ381-5TY5Z | Returned |
| February 2020 | $711.00 | 02/13/2020 | Processed | Q0MXW-ZMLZM | Returned |
| March 2020 | $711.00 | 03/03/2020 | Processed | Q2R23-P8720 | Returned |
| April 2020 | $711.00 | 04/06/2020 | Processed | Q5ZMY-MGR6C | Returned |
| May 2020 | $710.63 | 05/06/2020 | Processed | Q9B63-BML13 | Returned |
| June 2020 | $718.68 | 06/15/2020 | Processed | QF5YC-5T6X8 | Returned minus $59.57 |
| | Total Amount Paid: $4,304.31 | | | | Total Amount Returned to Plaintiff: $4,244.74 |

(Doc. No. 64, at 9, 12; *see also* Doc. No. 71-1 (pl.'s unredacted bank records).)

The parties agree that the defendants returned $4,244.74 to the plaintiff after the Payoff Funds were reversed from the 2287 Account and applied to the 2253 Account in June 2020 and that Hossain deposited that refund into his checking account in July 2020. (Resp. SUMF ¶ 19.) The defendants maintain that "[r]eversal of the Payoff Funds from the 2287 Account in June 2020 returned the 2287 Account to the point it was prior to when the Payoff Funds had been applied in mid-January 2020, so the 2287 Account was due for the February 2020 monthly payment." (SUMF ¶ 20.) They cite in support of this statement page 2 of Exhibit J, the Customer Account Activity Statement attached to their Motion for Summary Judgment (Doc. No. 57-10, at 2). This document is essentially incomprehensible to the court, and it does not serve to rebut the plaintiff's statements that his payments on the 2287 Account were neither returned to him nor credited toward either of his mortgage accounts. According to the plaintiff, the $4,244.74 that was refunded to him has "no relation to the 2287 Account or the amount said here $3,558.75. Plaintiff always considered the 2287 Account was active and acted on that per the Deed and the Note. PHH and Wells Fargo made the 2287 Account dysfunctional." (Doc. No. 64, at 21.) Again, PHH has failed to rebut this statement.

PHH states that the monthly statement it sent to Hossain in advance of his July 2020 monthly payment on the 2287 Account identified a past-due amount of $3,558.75, which is the total of the five months of past due payments (February – June 2020) and that Hossain never remitted payment to PHH for these five months, which would have brought the 2287 Account current. (SUMF ¶¶ 21, 22; *see also* Doc. No. 48-1, at 52–53.) The plaintiff disputes that he never remitted payment and disputes that the account was ever delinquent. As set forth above, he claims

that he remitted $3,558.75, which was never returned to him or, apparently, credited to either mortgage account balance.

The plaintiff continued to send monthly payments in the amount he believed he owed for the 2287 Account from July 2020 through August 2022. All of those payments were rejected or returned (except one) on the basis that they were not sufficient to cure the default.[5] The plaintiff sent repeated letters to PHH explaining his position (beginning in February 2020, after PHH had misapplied the Payoff Funds), and PHH sent him repeated delinquency notices and response letters that did not actually respond to his concerns. (*See, e.g.*, 48-1, at 1, 12, 47, 50, 52, 57, 60, 64, 67, 74, 76, 78, 93.)[6]

Hossain's position is that "the wrongful Release [of the 2287 Account] caused permanent massive errors in the 2287 Account in February 2020. Due to the errors, the 2287 Account ha[s] been suffering from inconsistencies, omissions, dysfunctionalities, anomalies, extinctions,

---

[5] In August 2021, PHH offered to modify the terms of the 2297 Account, reducing Hossain's monthly payments and reducing the adjustable interest rate. To accept the Modification Offer, Hossain would have had to make a payment of $538.14 by October 1, 2021 and execute and return the Loan Modification Agreement that was enclosed with the Modification Offer. When he, as usual, remitted a mortgage payment of $725.47 after having received the Modification Offer, PHH accepted it as in accordance with the Modification Offer. When Hossain never returned the executed Loan Modification Agreement, PHH eventually notified him that the offer was rescinded. Hossain states that he did not accept the offer because he "did not agree with the offer," apparently because he still believed that he had remitted payment as required every month and that the account should not have been deemed delinquent. (*See* Doc. No. 64 ¶¶ 40, 41.)

[6] The plaintiff appears to acknowledge that these payments were rejected but also states that he did not "receive any of these Checks back." (*See, e.g.*, Doc. No. 64, at 24.) However, his own exhibits show that these payments were rejected and returned. (*See, e.g.*, Doc. No. 48-1, at 28, 36, 40, 45, 57, 60; *see also* Doc. No. 57-8.)) Further, as the R&R notes, each of PHH's delinquency notices states that "[t]he first notice or filing required by applicable law for the foreclosure process has been made." (Doc. No. 61-2, 61-3.) The record also contains letters from PHH to Hossain from the same time period, stating that certain monthly payments were being returned "as [they are] insufficient to bring your account current" and that the 2287 Account "has been referred to an attorney"—defendant Wilson—"to handle the foreclosure process." (Doc. Nos. 61-2, 61-3.)

discontinuities, contradictions, and absence of capacities of normal course of action from February 2020 to August 2020." (Doc. No. 67 ¶ 61.) PHH maintains that the reversal of the Release set the account back to where it stood in February 2020. It states that it returned all of the plaintiff's payments beginning in July 2020 as insufficient to satisfy the default, but it never addresses his assertion that he submitted payments for *both* accounts from January through June 2020.[7] It simply takes the position that it returned all funds that had been wrongfully applied, setting both parties back to the situation as it existed in February 2020 with respect to the 2287 Account.

Eventually, on August 3, 2022, PHH foreclosed on the 2287 Account, and the property associated with that account—2505 Highland Trace Drive (the "Property")—was sold to a third party. The foreclosure sale resulted in excess proceeds in the amount of $69,373.59, which have been paid to the plaintiff.

The plaintiff alleges that the defendants breached the pre-foreclosure notice provisions of the deed of trust because they "failed to send all notices to [Hossain's] valid address" before foreclosing on the Property. (Doc. No. 62, at 12; Pl's SAMF ¶¶ 66–70.) The defendants respond only that "Plaintiff received the Notice of Trustee's Sale as noted in his response to the Motion for Summary Judgment." (Doc. No. 67, Resp. to ¶¶ 66–68 (citing Doc. No. 62, at 12 (stating that "PHH failed to change the address, but USPS continued to forward mails to Plaintiff's mailing address")).)

---

[7] It seems likely that the payments the plaintiff sent that were directed to the 2253 account were actually applied to that account, since PHH erroneously failed to apply the Payoff Funds to that account and it remained open. PHH does not confirm this supposition, however, or confirm that the Payoff Funds as eventually applied to the 2253 account were excessive due to the plaintiff's having continued to make five months of mortgage payments on the account after getting a pay-off estimate and submitting funds to match that estimate.

## IV.    DISCUSSION

### A.    The Defendants' Objections

1.    *Count XI – Breach of Contract Based on Failure to Comply with Pre-Foreclosure Notice Requirements*

The defendants assert that they complied with the Deed of Trust by providing notice of the foreclosure sale by sending notices to Hossain at the "property address and to other addresses provided by Mr. Hossain for such notices." (Doc. No. 58, at 10.) In addressing the plaintiff's wrongful foreclosure claim, the R&R finds that there is a genuine issue of material fact as to whether the defendants complied with the Deed of Trust's pre-foreclosure notice terms, insofar as it appears that they did not send notices to Hossain's specifically designated mailing address. (Doc. No. 76, at 27–29.) More specifically, the record contains a written notice of change of address that Hossain sent to PHH on October 7, 2020, notifying PHH that the mailing address for the 2287 Account had changed to 708 Lawler Lane, Nolensville, TN 37135-0688; nearly two years' worth of monthly mortgage statements and delinquency notices for the 2287 Account that PHH mailed to Hossain at 708 Lawler Lane; and state court records showing that 708 Lawler Lane was Hossain's mailing address throughout Wells Fargo and Wilson's Chancery Court action against him. (Doc. Nos. 57-6, 61-2, 61-3.) Yet, as the R&R notes, nothing in the record indicates that PHH, Wells Fargo, or Wilson sent a copy of the notice of trustee's sale to this address as required by the Deed of Trust.

The R&R also notes that, in the defendants' response to the plaintiff's allegations about their failure to provide pre-foreclosure notice to him at the proper address, the defendants state only that Hossain "received the Notice of Trustee's Sale" because Hossain stated generally that "'USPS continued to forward mails to [his] mailing address.'" (Doc. No. 67, at 15¶ 67 (quoting Doc. No. 62, at 12).) The Magistrate Judge "decline[d] to construe this assertion as a properly

presented and supported argument that Hossain cannot show damages resulting from PHH, Wells Fargo, and Wilson's failure to send a copy of the notice of trustee's sale to the 2287 Account's notice address." (Doc. No. 76, at 29–30 n.6.)

In their Objections to the R&R, the defendants argue that the Magistrate Judge erred in stating that the defendants "have not argued that Hossain cannot show damages resulting from PHH and Wells Fargo's failure to comply with the deed of trust's pre-foreclosure notice provisions." (Doc. No. 79, at 3 (quoting Doc. No. 76, at 29.) They insist that they did argue that Hossain cannot establish damages as to any of his contract-related claims and that the Magistrate Judge erred in overlooking these arguments.

Indeed, the defendants' Memorandum in support of their Motion for Summary Judgment asserts that Hossain cannot show damages arising from any alleged breach of the Note or Deed of Trust, because:

> (1) any misapplied payments were reversed and either reapplied or refunded; (2) Mr. Hossain received settlement funds as a result of the General Sessions Action and released any claims regarding the 2253 Account; (3) Mr. Hossain retained use and possession of the 2505 Highland Trace Drive without incurring costs associated with the 2287 Loan because the payments from July 2020-August 2022 (with the exception of one payment) were rejected or returned; and (4) not only was Mr. Hossain retaining access to all of the funds that otherwise would have been used to make the 2287 Mortgage Account payment, the property securing the 2287 Loan is a rental property from which Mr. Hossain received income . . . .

(Doc. No. 58, at 8–9 (citing Doc. No. 48 ¶¶ 174, 213).)

The R&R expressly acknowledges such arguments, however, observing that the defendants "argue only that Hossain cannot show damages resulting from the misapplied payoff funds and returned payments." (Doc. No. 76, at 29.) The defendants failed—either in support of summary judgment or their Objections—to argue that Hossain cannot show damages resulting from the failure to comply with the pre-foreclosure notice requirements, and the Magistrate Judge did not err in reaching that conclusion.

For that reason, the defendants' Objection to the recommendation that summary judgment on this claim be denied will be overruled, and the court will deny summary judgment on Count XI.

### 2. *Count XII – Wrongful Foreclosure Claim*

The R&R recommends that summary judgment be denied on the statutory wrongful foreclosure claim for largely the same reason: that there is a material factual dispute as to whether the defendants complied with the pre-foreclosure notice terms set forth in the Deed of Trust and, therefore, as to whether they complied with Tennessee statutory requirement that notice be sent to "[t]he last known mailing address of the debtor or any other mailing address of the debtor specifically designated for purposes of receiving notices provided at least thirty (30) days prior to the first publication date in written correspondence or written notice in accordance with the loan agreement from the debtor to the creditor." Tenn. Code Ann. § 35-5-101(e)(1)(B).

In their Objections, the defendants argue that Hossain never alleged in response to the Motion for Summary Judgment that the lack of notice prejudiced his ability to prevent or contest the sale. (Doc. No. 79, at 4.) They claim that the only harm he alleges is that the publication notices were defamatory. However, the defendants did not present this argument in their summary judgment briefing, and the court declines to address it now. They also argue that the wrongful foreclosure argument fails because Hossain seeks damages rather than recission and that, because he only seeks damages, the R&R incorrectly finds that Hossain does not need to establish damages in connection with his wrongful foreclosure claim. The defendants never argued in support of summary judgment that the plaintiff could not establish damages; they argued only that they complied with the statutory notice requirements. (*See* Doc. No. 58, at 10–11.)

While the R&R does state that damages are not a required element of a wrongful foreclosure claim (*see* Doc. No. 76, at 31), that was not the basis for the denial of summary

judgment as to this claim. Instead, the R&R addresses the arguments actually raised by the defendants' motion and finds that there is a material factual dispute as to whether the defendants complied with the statutory notice requirements (and that the defendants' *res judicata* arguments are inapplicable to this claim). (Doc. No. 76, at 33.) In addition, as the Magistrate Judge noted, the defendants never argued that the plaintiff could not establish damages arising from the lack of notice—they only argued that Hossain could not show damages arising from the misapplied payoff funds and returned payments. The R&R's finding that the defendants failed to argue that the plaintiff could not establish damages arising from the insufficient notice applies equally to the wrongful foreclosure claim. Moreover, because the defendants did not raise the issue of damages related specifically to the lack of notice in their summary judgment briefing, Hossain had no obligation to put forth evidence of such damages—for instance, by putting forth evidence that, if he had received proper notice that the sale was actually going to occur, he could have procured funds to pay off the alleged deficiency and prevent the sale of the Property.

The defendants' objection to the recommended disposition of this claim, therefore, will also be overruled, and summary judgment as to Count XII will be denied.

### B.    The Plaintiff's Objection: Count XXI

The Magistrate Judge and the defendants construe the plaintiff's claims for "misapplication of payments" (Count IX) and "barr[ing Hossain] to make payments/payment rejection" (Count XXI) as breach of contract claims based on the defendants' (1) initial application of the payoff funds to the 2287 account and (2) subsequent refusal to accept Hossain's later payments on the 2287 Account. (*See* Doc. No. 76, at 23; Doc. No. 58, at 7–8.) The Magistrate Judge recommends summary judgment for the defendants on both of these claims.

With respect to the argument that the misapplication of the Payoff Funds to the 2287 Account instead of to the 2253 Account, the R&R finds that the plaintiff cannot establish damages

arising from this event, even assuming it did breach the Deed of Trust, because the funds were subsequently reversed out and applied to the 2253 Account, and the plaintiff settled his claims against the defendants related to the 2253 account. (Doc. No. 76, at 24–25.)

The plaintiff does not appear to object to that conclusion. Instead, as discussed above, Hossain's position is that the defendants breached the Deed of Trust for the 2287 Account, based on their continuing to accept his mortgage payments on that account from February through June 2020 (in addition to his continued payments on the 2253 Account from January through June 2020), failing to credit the payments to the correct account or return them to him, subsequently using the alleged payment default to reject payments made after June 2020, and eventually foreclosing on the Property. As he states:

> [i]n June 2020, PHH had a total of $3,558.75 in its possession and per the Deed, PHH had binding duty to apply to Account 2287 and ke[ep] Account 2287 active and current as the amount was sufficient for months of February 2020 to June 2020. But PHH completely failed to apply February 2020 – June 2020 Payments to Account 2287 and moved to wrongfully make Account 2287 in Default on 06/10/2020 (Doc. No. 1-2), initiate wrongful foreclosure on 07/23/2020 (Doc. No. 1-7), and foreclosed the Account 2287 in August 2022. PHH breached the contract.

(Doc. No. 80, at 6.)

Neither the R&R nor the defendants' briefing addresses the plaintiff's claim—repeated in in his summary judgment briefing and his Objection—regarding the fact that he made double mortgage payments throughout the spring of 2020, on both mortgage accounts, but the defendants have only ever accounted for and reimbursed him the payments he made toward the 2253 Account. The plaintiff submitted his bank records demonstrating that he made the payments set forth in the two charts he provided. The defendants never even address these allegations and have not explained what happened to the excess funds.

Under these circumstances, the court will sustain the plaintiff's Objection and reject the recommendation to grant summary judgment on Count XXI, for breach of the Deed of Trust by

failing to properly apply mortgage payments and credit them to the correct account and then repeatedly rejecting subsequent payments.

## V.    CONCLUSION

For the reasons set forth herein, the defendants' Objections (Doc. No. 79) will be overruled, and the plaintiff's Objections (Doc. No. 80) will be sustained. The R&R (Doc. No. 76) will be accepted in part and rejected only with respect to the recommendation that Count XXI be dismissed, and the Motion for Summary Judgment (Doc. No. 57) will be granted in part and denied in part. The plaintiff's Motion for Leave to File Additional Records (Doc. No. 71) will be granted as unopposed.

An appropriate Order is filed herewith.


ALETA A. TRAUGER
United States District Judge